STATE of Wisconsin, Plaintiff-Respondent,

v.

Wayne L. SOHN, Defendant-Appellant.†

Court of Appeals

*No. 94–1414–CR. Submitted on briefs February 3, 1995.—Decided March 29, 1995.*

(Also reported in 535 N.W.2d 1.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Andrew H. Morgan* of *Charlton Law Firm* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. Wayne L. Sohn appeals from a judgment of conviction for homicide by intoxicated use of a vehicle pursuant to § 940.09, STATS. On appeal, Sohn argues that the trial court: (1) improperly admitted evidence of Sohn's sixteen prior convictions, (2) improperly compelled Sohn to testify when it made a mid-trial ruling that the evidence did not then support a jury instruction on Sohn's affirmative defense pursuant to § 940.09(2), and (3) erroneously ruled that a tractor is a "vehicle" for purposes of criminal liability under § 940.09. We reject all of Sohn's arguments and affirm the judgment of conviction.

## FACTS

At approximately 10:15 p.m. on the evening of June 8, 1993, a motorist came to Sohn's residence and informed him that as a result of an earlier storm, a large tree had fallen west of Sohn's residence and was obstructing the county highway. The motorist asked Sohn to contact the appropriate authorities. Shortly thereafter, Calumet County Sheriff's Lieutenant Jeff Williams, police officer Mark Growe and several utility workers arrived at the scene of the fallen tree.

Sohn, later described by witnesses as being visibly intoxicated, offered the use of his tractor to remove the fallen tree. After the utility workers attached the tree to the tractor, Sohn towed the tree back to his home, following a squad car driven by Williams. Sohn unhooked the tree in his front yard and then drove the tractor on the highway back towards the utility workers. Sohn was operating the tractor with one tire on the pavement and the other tires on the shoulder of the

350

highway. The tractor had an estimated maximum speed of fourteen miles per hour.

En route, Sohn's tractor struck and killed Williams, who was on the shoulder of the highway attempting to light a flare. Williams's squad car was stopped on the opposite side of the highway with its lights on and the trunk and door open. The accident occurred at approximately 11:35 p.m., and Sohn immediately ran to the utility workers for assistance.

At about 12:05 a.m. on June 9, Sohn was arrested for operating a vehicle while intoxicated. A 2:43 a.m. breath test revealed that he had a blood alcohol concentration of .22%. Sohn was charged with two counts of homicide by intoxicated use of a vehicle in violation of § 940.09(1)(a) and (b), STATS. On October 7, 1993, after a three-day trial, a jury found Sohn guilty of both charges. Pursuant to § 940.09(1m), a single judgment of conviction was entered against Sohn. He appeals.

We will recite additional facts as we address the appellate issues.

## DISCUSSION

### 1. *Evidence of Prior Convictions*

Sohn first argues that the trial court improperly admitted evidence of his sixteen prior convictions. He argues that the evidence was inadmissible other acts evidence under § 904.04(2), STATS., which prohibits the use of other crimes, wrongs or acts "to prove the character of a person in order to show that the person acted in conformity therewith." He contends that the trial court failed to identify a permissible exception under

§ 904.04(2) for admitting evidence of the prior convictions.[1]

The admissibility of evidence is a discretionary ruling for the trial court. *See State v. Kuntz,* 160 Wis. 2d 722, 745, 467 N.W.2d 531, 540 (1991). Our inquiry is not whether this court would have admitted the evidence, but is limited to whether the trial court acted in accordance with accepted legal standards and the facts of record. *Id.* This court will uphold the trial court's ruling if there exists a reasonable basis for the trial court's determination. *See id.* at 745-46, 467 N.W.2d at 540.

Sohn's appellate argument misses the focus of the State's use of the prior convictions and the basis of the trial court's ruling permitting use of the evidence. As noted, Sohn brings the issue to us under § 904.04(2), STATS. However, the State did not proffer, and the court did not admit, the evidence under that statute. Instead, the evidence was used for impeachment purposes pursuant to § 906.09, STATS.[2]

---

[1] Section 904.04(2), STATS., does not prohibit the introduction of other crimes, wrongs or acts when the evidence is offered for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The proffered evidence must be probative of some proposition other than the proposition that "because the person did prior act X, he or she is of such a character and disposition to have committed present act Y." *State v. Johnson,* 184 Wis. 2d 324, 336-37, 516 N.W.2d 463, 466 (Ct. App. 1994).

[2] Section 906.09, STATS., provides in part:

**Impeachment by evidence of conviction of crime. (1)** GEN-
ERAL RULE. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is admissible. The party cross-examining the witness is not concluded by the witness's answer.

When evidence of prior convictions is admitted for impeachment purposes under § 906.09, STATS., the scope of the inquiry is very limited. *State v. Rutchik,* 116 Wis. 2d 61, 76, 341 N.W.2d 639, 646 (1984). The witness may be asked if he or she has ever been convicted of a crime and, if so, how many times. *Id.* If the witness's answers are truthful and accurate, then no further inquiry may be made. *Kuntz,* 160 Wis. 2d at 752, 467 N.W.2d at 543.

At trial, the State cross-examined Sohn and asked whether he had ever been convicted of a crime. When Sohn replied that he had, the State asked how many times. Sohn responded that he had been convicted sixteen times, and the State ended its inquiry.

Sohn makes no appellate argument against the evidence under § 906.09, STATS. We affirm the trial court's ruling.

### 2. Jury Instruction

Next, Sohn contends that the trial court improperly compelled him to take the stand in his own defense in order to support his affirmative defense pursuant to § 940.09(2), STATS. This statute provides:

> The defendant has a defense if he or she proves by a preponderance of the evidence that the death would have occurred even if he or she had been exercising

---

(2) EXCLUSION. Evidence of a conviction of a crime may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

(3) ADMISSIBILITY OF CONVICTION. No question inquiring with respect to conviction of a crime, nor introduction of evidence with respect thereto shall be permitted until the judge determines pursuant to s. 901.04 whether the evidence should be excluded.

due care and he or she had not been under the influence of an intoxicant or did not have a blood alcohol concentration described under sub. (1)(b) or (bm) or (1g)(b).[3]

During the course of the defense case, but before Sohn himself testified, Sohn asked the trial court to rule that the evidence supported a jury instruction pursuant to the statute. The trial court ruled that the evidence to that point did not support the instruction. Thus, in order to obtain the instruction, Sohn did testify. And, after the close of evidence, the trial court granted Sohn's request for the affirmative defense under § 940.09(2), STATS.

On appeal, Sohn argues that had the trial court correctly evaluated the evidence at the time he requested the instruction, he would not have testified and he would not have suffered the substantial impeachment caused by his prior convictions.

We do not address the trial court's mid-trial ruling on the merits. Generally, the procedure for instructions in criminal cases is the same as that provided in civil actions. Section 972.01, STATS.[4] Section 805.13(3),

---

[3] Sohn cited the following evidence in support of his request for the affirmative defense instruction: (1) he had vision only in his left eye due to a cataracts condition in his right eye, (2) an optometrist testified that the flashing lights and headlights of the stopped squad car could have temporarily restricted the vision of a person like Sohn if he had been looking directly at the squad car, (3) Sohn made a statement to an officer that he was looking at the squad car before the accident, and (4) Williams was wearing a dark jacket at the time of the accident.

[4] See also § 972.11, STATS., providing that the rules of practice in civil actions are applicable to criminal actions unless the content of a statute or rule requires a different construction.

STATS., requires that the trial court conduct an instructions conference with counsel *"[a]t the close of the evidence."*[5] (Emphasis added.) While this statute permits a party to request an instruction prior to the instructions conference, it does not contemplate the court making definitive jury instructions rulings before the evidence is closed.

Section 972.10, STATS., is also pertinent to our discussion because Sohn was requesting an instruction unique and special to the facts of this case. This statute provides in part:

> **Order of trial.** . . . **(5)** *When the evidence is concluded and the testimony closed,* if either party desires special instructions to be given to the jury, the instructions shall be reduced to writing, signed by the party or his or her attorney and filed with the clerk, unless the court otherwise directs. Counsel for the parties . . . shall be allowed reasonable opportunity to examine the instructions requested and to present and argue to the court objections to the adoption or rejection of any instructions requested by counsel. The court shall advise the parties of the instructions to be given. [Emphasis added.]

Like § 805.13(3), STATS., regarding instructions generally, § 972.10(5), regarding specific instructions, also

---

[5] Section 805.13(3), STATS., provides in relevant part:

At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. At the conference, or at such earlier time as the court reasonably directs, counsel may file written motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the motions. The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit.

envisions the trial court making its instructional rulings "[w]hen the evidence is concluded and the testimony closed."

Therefore, under either statute, the trial court's mid-trial ruling was premature. We properly reserve our appellate review of a trial court's instructional rulings based upon the totality of the evidence and the applicable law. Because Sohn was not entitled to a mid-trial "advisory" ruling by the trial court, we do not consider his argument that the trial court somehow erred in that decision. The trial court's ruling was in the nature of a nonbinding advisory opinion which does not form a proper basis for an appeal by Sohn on the issue. *See Heideman v. American Family Ins. Group,* 163 Wis. 2d 847, 867, 473 N.W.2d 14, 22 (Ct. App. 1991).

A party is not entitled to obtain periodic rulings during trial as to whether the partial evidence supports contemplated jury instructions. If we ruled otherwise, we would markedly alter traditional jury trial procedure and the traditional role of the trial judge in the matter of jury instructions. The trial judge would become an unwitting partner in the strategic decisions properly left to trial counsel.[6]

### 3. Section 940.09, STATS.

Last, Sohn argues that a tractor is not a "vehicle" within the meaning of the homicide by intoxicated use of a vehicle statute, § 940.09(1), STATS.

---

[6] For a similar approach and analysis, *see Williams v. Gurwitz,* 222 P.2d 673, 674 (Cal. Dist. Ct. App. 1950).

Sohn bases his argument on *Schanke v. Wisconsin County Mut. Ins. Co.*, 177 Wis. 2d 746, 754, 502 N.W.2d 866, 869 (Ct. App. 1993), in which we held that a motor grader was not a motor vehicle for purposes of the municipal liability statute, § 345.05, STATS. That question was governed by whether the grader was a motor vehicle not exempt from registration under § 341.05, STATS. *Schanke*, 177 Wis. 2d at 750, 502 N.W.2d at 867. We concluded that the grader was "road machinery" as defined by § 340.01(52), STATS., and therefore exempt from motor vehicle registration under § 341.05. *Schanke*, 177 Wis. 2d at 754, 502 N.W.2d at 869; *see* § 345.05(1)(bm), (2).

*Schanke* has no relevance to this case. That was a civil case involving the registration requirements of the motor vehicle code set out in ch. 341, STATS. This is a criminal case under the criminal code which sets out its own definition of a "vehicle" and which does not look to, or borrow from, the motor vehicle code in that endeavor. In short, whether Sohn's tractor had to be registered or whether it was a motor vehicle for civil liability purposes pursuant to §§ 341.05(16) and 345.05, STATS., has no bearing upon this criminal case.

Instead, the controlling statute in this case is § 939.22(44), STATS., which defines "vehicle" for purposes of the criminal code. *See* § 939.20, STATS. We first note that while § 939.22 gives a definition for a "vehicle" in subsec. (44), the term "motor vehicle" is not defined in the statute. Under subsec. (44), a "vehicle" is defined as "any self-propelled device for moving persons or property or pulling implements from one place to another, whether such device is operated on land, rails, water, or in the air." On its face, this definition clearly encompasses a tractor.

357

In addition, the common and ordinary meaning of a word may be established by the definition given in a recognized dictionary. *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 484, 464 N.W.2d 654, 662-63 (1991). A tractor is defined as follows:

> [A]n apparatus or device for the draft or sometimes propulsion of another body: as **a:** TRACTION ENGINE **1b**(1): a 4-wheeled or caterpillar-tread rider-controlled automotive vehicle used esp. for drawing agricultural or other implements or for bearing and propelling such implements.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2421 (1976).

Comparing both definitions, a tractor is clearly a vehicle. It is a self-propelled device used for drawing people, property, agricultural or other implements. *See id.;* § 939.22(44), STATS. Because § 940.09(1), STATS., imposes criminal liability for homicide by the intoxicated use of a "vehicle" and we conclude that a tractor is a vehicle within the meaning of § 939.22(44), Sohn was properly prosecuted under § 940.09(1).

However, Sohn further argues that because the supreme court used the phrase "motor vehicle" instead of "vehicle" in *State v. Caibaiosai,* 122 Wis. 2d 587, 363 N.W.2d 574 (1985), the issue has already been resolved in his favor. He cites the following passage in support of his argument:

> Section 940.09, Stats., was designed to protect the public from a particular type of risk and harm, namely to hold accountable persons who become intoxicated, operate a *motor vehicle* and cause the death of another person. In the preface to the latest

revisions of the drunk driving laws, the legislature expressly stated that its purpose was to "provide maximum safety for all users of the highway of this state" from the harm threatened by "[o]peration of *motor vehicles* by persons who are under the influence of an intoxicant." Laws of 1981, ch. 20, secs. 2051(13)(a)1 and 2051(13)(b)1.

*Caibaiosai,* 122 Wis. 2d at 591, 363 N.W.2d at 576 (emphasis added). From this, Sohn maintains that *Caibaiosai* "impliedly limits criminal liability to 'motor vehicle' operators" and asks this court "to rule that the legislative intent of [§ ] 940.09(1)[, STATS.,] is to prosecute operators of 'motor vehicles,' not operators of tractors, bicycles, or other 'vehicles.' "

We reject Sohn's reading of *Caibaiosai.* Case law has acknowledged that the phrase "motor vehicle" is generic common usage for all classes of self-propelled vehicles not operating on stationary rails or tracks. *See Slaughter v. Abilene State Sch.,* 561 S.W.2d 789, 792 (Tex. 1977); *see also* §§ 340.01(35), 346.63(1), STATS. The term "motor vehicle" includes various vehicles which cannot be classified as automobiles. *Slaughter,* 561 S.W.2d at 792.

Sohn's interpretation of *Caibaiosai* represents an overly-technical and strained reading of the case. The issues in *Caibaiosai* focused entirely on the affirmative defense provisions of § 940.09(2), STATS. The case had nothing to do with the meaning of "motor vehicle" or "vehicle" within the meaning of the motor vehicle code or the criminal code. As such, it is not remarkable that the supreme court used the commonly applied phrase "motor vehicle" when discussing the homicide by intoxicated use of a vehicle statute.

We conclude that the definition set out at § 939.22(44), STATS., clearly includes a tractor as a vehicle for purposes of the homicide by intoxicated use of a vehicle statute, § 940.09, STATS.[7]

*By the Court.*—Judgment affirmed.

[7] Other jurisdictions have held that a farm tractor is a "vehicle" or "motor vehicle" for purposes of criminal prosecution under statutes prohibiting driving while intoxicated. *See Heath v. Commonwealth,* 761 S.W.2d 630, 631 (Ky. Ct. App. 1988); *State v. Powell,* 306 S.W.2d 531, 533-34 (Mo. 1957); *State v. Richardson,* 832 P.2d 801, 802-04 (N.M. Ct. App. 1992); *State v. Green,* 110 S.E.2d 805, 808 (N.C. 1959); *see also Fitch v. State,* 853 S.W.2d 874, 877 (Ark. 1993) (all-terrain vehicle (ATV) driven in defendant's own yard and neighbor's yard a "motor vehicle" under DWI statute although no license, registration or liability insurance is required to operate ATV); *Slaughter v. Abilene State Sch.,* 561 S.W.2d 789, 792 (Tex. 1977) (tractor a "motor vehicle" within meaning of Texas Tort Claims Act).