Michelle L. Paskiewicz and Andrew A. Paskiewicz,
Plaintiffs-Appellants,

v.

American Family Mutual Insurance Company,
Ray R. Vogt, Jr., Brenda Free and
Wisconsin Health Fund, Defendants,

Acuity, A Mutual Insurance Company,
Defendant-Respondent.†

Court of Appeals

*No. 2012AP2758. Submitted on briefs May 2, 2013.
—Decided June 26, 2013.*

2013 WI App 92

(Also reported in 834 N.W.2d 866.)

† Petition for Review denied 11-26-13.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Patrick J. Schott* and *April Rockstead Barker* of *Schott, Bublitz & Engel, S.C.*, Brookfield.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Julie K. Vaughn* of *Simpson & Deardorff, S.C.*, Milwaukee.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. GUNDRUM, J. Michelle and Andrew Paskiewicz appeal from a summary judgment dismissing their uninsured and underinsured motorists (UM/UIM) claims against their insurer, Acuity. They contend the circuit court erred in concluding that their insurance policy[1] did not provide coverage because the miniature all-terrain vehicle at issue is a toy and therefore not a "land motor vehicle" under the policy. We agree with the Paskiewiczes and reverse.

## BACKGROUND

¶ 2. The Paskiewiczes filed a complaint alleging Michelle sustained serious injury to her left leg as a result of three-year-old Alyssa Free striking her with a four-wheel recreational all-terrain vehicle Alyssa was operating. On the date of the alleged injury, Alyssa was at the Paskiewiczes' property with her grandfather, Ray Vogt, a neighbor of the Paskiewiczes. The vehicle Alyssa was operating is a Kazuma Meerkat50–4A.[2] The manufacturer's specifications identify the Meerkat50–

---

[1] Considering the record and the parties' briefs on appeal, there is a lack of clarity as to whether only a motorcycle policy held by the Paskiewiczes is at issue on appeal or if a "Road and Residence" policy the Paskiewiczes had with Acuity is at issue as well. Because the relevant language of both policies is identical, our interpretation applies to both. For simplicity, we refer to "policy" in the singular.

[2] Because we decide herein that the Meerkat50–4A is in fact a "vehicle" under the policy, we refer to it as such throughout this opinion.

4A as having, among other characteristics, a 50–cubic-centimeter 4–stroke gasoline-powered internal-combustion engine, 4–speed semi-automatic transmission, timing chain, crankshaft, clutch, oil pump and pistons, with a wheelbase of 2.3 feet and net weight of 156.53 pounds.[3] The specifications further identify the maximum speed for the Meerkat50–4A as 21.75 miles per hour and the dimensions, in feet, as: length, 3.61; width, 2.13; and height, 2.43.[4]

¶ 3. As part of their complaint, the Paskiewiczes sued Acuity under the UM/UIM provisions of their policy. Acuity moved for summary judgment,[5] arguing that, because the Meerkat50–4A with which Alyssa struck Michelle was "child-sized" and was "a child's toy," the policy did not provide coverage for damages caused by it. The circuit court granted Acuity's motion, and the Paskiewiczes appeal. Additional facts are discussed below as needed.

## DISCUSSION

¶ 4. We review de novo a grant of summary judgment, applying the same methodology as the circuit court. *Frank v. Wisconsin Mut. Ins. Co.*, 198 Wis. 2d

---

[3] Values identified as "feet," "pounds," and "miles per hour" have been converted from metric values.

[4] Citing to photographs of the vehicle in the record, the Paskiewiczes assert that the Meerkat50–4A Alyssa was operating "bore warning stickers indicating that it was not to be operated by anyone under 6 years old." We are unable to confirm the accuracy of this statement from our review of the photographs; however, Acuity has not disputed it on appeal.

[5] Although captioned as a motion for declaratory judgment, Acuity, in its reply brief before the circuit court, acknowledges that it is more properly a motion for summary judgment. That is also the posture the circuit court took in considering the motion and we do the same.

689, 693–94, 543 N.W.2d 535 (Ct. App. 1995). Summary judgment is proper when the relevant facts are undisputed and only a question of law remains. *Id.* at 694.

¶ 5. The parties agree that the provision of UM/UIM coverage under the policy turns on the question of whether the Meerkat50–4A is a "land motor vehicle."[6] This question requires that we interpret the policy, which is a matter of law we review de novo. *Id.* We give words used in the insurance contract their plain and ordinary meaning. *Id.* "When the terms are plain and unambiguous, we will construe the contract as it stands." *Id.* Where policy language is ambiguous, the policy will be construed in favor of coverage. *Id.*

¶ 6. The Paskiewiczes contend the Meerkat50–4A "unambiguously falls within the common and ordinary use of the phrase 'land motor vehicle,' " and, thus, coverage applies. They alternatively argue that if there is any ambiguity regarding that term, the policy must be interpreted so as to provide them with coverage. Acuity also contends the term "land motor vehicle" is unambiguous, but argues that the Meerkat50–4A does not fall within the scope of the term because it is a "toy ATV" and a reasonable insured would not consider such a "child's toy" to qualify as a "land motor vehicle" or "vehicle" under an "automobile/cycle" insurance policy. We agree with the Paskiewiczes that the term "land motor vehicle" is unambiguous and covers the Meerkat50–4A.

¶ 7. The policy does not define the terms "land motor vehicle," "motor vehicle" or "vehicle." When a

---

[6] "Uninsured motor vehicle" and "underinsured motor vehicle" are in relevant part defined in each policy as "a land motor vehicle or trailer."

policy fails to define a term, it is appropriate to consider other sources to assist in determining the ordinarily understood meaning of a word or phrase. *See, e.g., Just v. Land Reclamation, Ltd.*, 155 Wis. 2d 737, 745, 456 N.W.2d 570 (1990) (dictionary); *State v. Sohn*, 193 Wis. 2d 346, 359, 535 N.W.2d 1 (Ct. App. 1995) (case law).

¶ 8. Neither party disputes that the Meerkat50–4A was designed to operate on land, and was in fact doing so at the time of the incident in question. The parties also do not contest, nor could they in light of the undisputed facts regarding the nature of the Meerkat50–4A, that this vehicle operated under the power of a motor. We note also that "[c]ase law has acknowledged that the phrase 'motor vehicle' is generic common usage for all classes of self-propelled vehicles not operating on stationary rails or tracks," and is a term which "includes various vehicles which cannot be classified as automobiles." *Sohn*, 193 Wis. 2d at 359. Further, common definitions of "vehicle" include: "any means in or by which someone travels or something is carried or conveyed; a means of conveyance or transport," and "a conveyance moving on wheels, runners, tracks, or the like, as a cart, sled, automobile, or tractor." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, 2109 (2d ed. 1987); *see also Sohn*, 193 Wis. 2d at 357 (concluding that a tractor is a "vehicle" under a statute defining that term as "any self-propelled device for moving persons or property or pulling implements from one place to another"). The Meerkat50–4A fits the common understanding of "land motor vehicle."

¶ 9. In arguing that the Meerkat50–4A is not a "land motor vehicle," Acuity emphasizes that it is small in size, could not operate at "high speeds," and was designed for "child's play," and contends that it is not a

means of conveyance. Significantly, Acuity has identified no language in the policy which would exclude a motor-powered vehicle which operates on land, such as the Meerkat50–4A, from coverage based upon its size, the speed at which it can travel, or its primary use being for the entertainment or recreation of children. According to the manufacturer, the Meerkat50–4A weighs over 150 pounds and is designed to travel at speeds exceeding 20 miles per hour. These facts are not so insignificant as to lead to the conclusion that the Meerkat50–4A somehow does not "count" as a "land motor vehicle."[7]

¶ 10. Acuity is correct in pointing out that the term "vehicle" means a "conveyance," but is incorrect in arguing that the Meerkat50–4A is not a conveyance merely because it is intended for use by children. The undisputed facts of record leave no question that the Meerkat50–4A is a conveyance that, at the time of the incident in question, was in fact being used as such. *See* RANDOM HOUSE DICTIONARY, *supra,* 445 (defining "convey" as "to carry, bring, or take from one place to another; transport; bear"). Indeed, Acuity's appellate position appears at odds with a position it previously took before the circuit court in this case. In opposing another insurer's motion for summary judgment, Acuity argued that "[b]ased upon Vogt's testimony, it is undisputed that the [Meerkat50–4A] is a motorized land conveyance designed principally for recreational use off public roads." Here, the Meerkat50–4A—whether driven around the yard, to a neighbor's house, or around the block on the neighborhood sidewalk—was specifically designed to and in fact did operate as a conveyance.

[7] We note that, despite its size, the Paskiewiczes claim it caused Michelle serious injury and that past and future medical bills will exceed $200,000.

¶ 11. We find this case similar to that of *Colwell v. State Farm Mutual Automobile Insurance Co.*, 600 P.2d 751 (Ariz. Ct. App. 1979), in which the court interpreted the undefined policy term "land motor vehicle" as applying to a mini-bike operated by an eight year old. *Id.* at 751–52. Like Acuity here, the appellant in *Colwell* claimed that the automobile insurance policy in that case was not designed to cover the circumstance of an eight year old operating a mini-bike, as opposed to a person driving an automobile. *Id.* at 752. The court concluded that the term "land motor vehicle" was unambiguous and, considering the nature of the mini-bike, noted: "We have little difficulty in holding that the common sense definition of the term 'land motor vehicle' would include such a gasoline-powered motorized two-wheeled vehicle with a displacement of 50 cubic centimeters." *Id.* Similarly, the Meerkat50–4A is a gasoline-powered motorized four-wheeled vehicle with a 50–cubic-centimeter engine.

¶ 12. Our conclusion is bolstered by the fact that the policy specifically excludes from coverage as an uninsured or underinsured motor vehicle other motor-powered vehicles which operate on land, such as those that "operate[] on . . . crawler-treads," like snowmobiles, *see Frank*, 198 Wis. 2d at 693, and "farm-type tractor[s]," but does not include similar language for vehicles like the Meerkat50–4A. If Acuity intended to exclude other vehicles from coverage, based upon their size, certain characteristics, or intended use by a particular class of citizens (e.g., children), it could have written the policy to do so, but it did not.

¶ 13. For the reasons set forth above, we conclude that the Meerkat50–4A is a "land motor vehicle" under the policy. Accordingly, we reverse the circuit court's

522

grant of summary judgment to Acuity and remand for proceedings consistent with this opinion.[8]

*By the Court.*—Judgment reversed and cause remanded.

---

[8] The Paskiewiczes also argue that reversal is appropriate because Acuity's summary judgment motion was "filed late without cause." Because we reverse on the substantive ground raised by the Paskiewiczes, we do not address this procedural issue.