**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 10, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP2244**

Cir. Ct. No. **2011CV1224**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

VILLAGE OF SLINGER,

   PLAINTIFF-RESPONDENT,

 V.

POLK PROPERTIES, LLC AND DONALD J. THOMA,

   DEFENDANTS-THIRD-PARTY
   PLAINTIFFS-APPELLANTS,

 V.

RUSSELL BRANDT, RICK GUNDRUM, JEFF BEHREND,
LEE FREDERICKS, JOHN DUKELOW, RICHARD KOHL, DEAN OTTE,
JESSI BALCOM AND ABC INSURANCE COMPANY,

   THIRD-PARTY DEFENDANTS.

---

APPEAL from an order of the circuit court for Washington County: SANDY A. WILLIAMS, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Hagedorn, J.

¶1    NEUBAUER, C.J. Polk Properties, LLC and Donald J. Thoma (collectively Polk) challenge circuit court orders arising from their unlawful agricultural use of property zoned residential by the Village of Slinger at Polk's request in 2006.  Polk also recorded a restrictive covenant limiting the use of the property to residential.  In December 2012, the circuit court issued an injunction prohibiting Polk from continuing agricultural activities.   However, Polk's agricultural use from 2009 to 2012 entitled it to pay lower property taxes from 2010 to 2013.[1]  Polk challenges the circuit court's order subjecting Polk to daily forfeitures for the violation of zoning law and its related contempt order.  Polk also appeals the circuit court's determination that Polk's breach of the restrictive covenant entitled the Village to recover as damages the difference between what Polk was taxed for agricultural use and what Polk should have been taxed at the residential rate for the years 2010 through 2013.  The court rejected several additional attempts to challenge these orders and the court's 2012 injunction.  We affirm.

**BACKGROUND**

¶2    The property involved is about eighty-two acres of rural land in the Village.  Polk purchased the property in 2006 in order to develop the farmland into a residential subdivision.  That same year, Polk successfully requested that the Village rezone the property from agricultural to residential.

---

[1] *See **Thoma v. Village of Slinger***, 2018 WI 45, ¶17, 381 Wis. 2d 311, 912 N.W.2d 56 (classification of real property for tax purposes is based on the actual use of the property).

¶3    Polk also drafted and signed a Declaration of Covenants, Conditions, and Restrictions of Pleasant Farm Estates.  This Declaration established how the subdivision and its development were to be governed and imposed various conditions and uses upon the property.  Article 5.1 of the Declaration states that each lot "shall be occupied and used only for single family residential purposes and for no other purpose."  The Declaration bound Polk, its successors and assigns, and all future owners and occupants of the property.  The Declaration was filed with the Village's register of deeds in February 2007.

¶4    In 2007, Polk also entered into a Subdivision Development Agreement with the Village, stating that the development was zoned for only single-family use.  The Development Agreement was filed with the register of deeds in July 2008.

¶5    There appears to be no dispute that the lots were difficult to sell because of an economic downturn at that time.

¶6    According to Polk, both before and after its purchase, the property had been covered with a grass/hay mix of vegetation that has required agricultural attention, including harvesting several times each summer.  Because Polk continued the agricultural use, the Village commenced this action in October 2011, seeking an order enjoining that use.  In December 2012, the court enjoined Polk from causing or permitting the property "to be used for agricultural

purposes and [commanded Polk] to bring said real property into compliance with" the Declaration's requirement that the lots be used for residential purposes only.[2]

¶7   In October 2013, the court granted the Village's motion to amend its complaint to add, among other things, a claim for damages consisting of the tax revenue lost for the years 2010 through 2013 (the difference between the lower agricultural taxes paid and the higher residential taxes that should have been paid) and a claim for the imposition of daily forfeitures due to the zoning law violations.

¶8   In turn, Polk moved to vacate the injunction contending that it had unilateral authority to amend the Declaration to permit agricultural activities until all of the lots were sold.  The court denied Polk's motion, reasoning that, pursuant to WIS. STAT. § 236.293 (2017-18),[3] once a restrictive covenant was placed on the land for the benefit of a public body, Polk could not amend or remove the restriction without a written release by the public body.

¶9   In March 2015, the Village moved for summary judgment on its claim for lost tax revenue and its claim for daily forfeitures for zoning law violations.  After extensive briefing and oral argument, the court granted the motion.

---

[2] A motion for contempt was filed by the Village on August 9, 2013, asserting that "one or more of the defendants disobeyed" the court's injunction "by conducting or allowing the conduct of agricultural activities on the subject property."  A hearing was not held until September 2017, as discussed below.

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶10     For the lost revenue claim, the court calculated a monetary award of $60,970.36 for the differential in tax rates for the years 2010 through 2013.[4]

¶11     For the zoning code violations claim, the court agreed that daily forfeitures should be imposed commencing on October 7, 2009, and continuing until all agricultural use of the property had been stopped. The court would determine at a later hearing exactly when the agricultural use had stopped and then arrive at a total forfeiture amount.

¶12     At a March 10, 2017 status hearing, the matters that remained pending in the action were identified. The resulting order identified these issues: (1) the daily forfeitures for the zoning code violations; (2) the determination of a claim by the Village that sought specific performance of Polk's alleged obligation to provide a letter of credit to ensure its performance; and (3) Polk's additional motion, which essentially challenged the court's authority to grant summary judgment on the Village's recovery of taxes and sought the voiding of that judgment and dismissal of the claim. The order set aside one day for an evidentiary hearing on June 6, 2017.

¶13     No evidentiary hearing took place. Instead, the court denied Polk's motion and upheld the judgment awarding the Village damages for the differential in tax rates. During a break, the parties reached a tentative global settlement. Before the settlement could be finalized, Polk withdrew upon learning that the Wisconsin Supreme Court granted its petition for review in Polk's assessment challenge claiming that it was entitled to the agricultural use tax rate for 2014. *See*

---

[4] The court's order actually separated out the individual amounts owing from Polk ($48,953.26) and Thoma ($12,017.10). The total was $60,970.36.

*Thoma v. Village of Slinger*, 2018 WI 45, 381 Wis. 2d 311, 912 N.W.2d 56 (petition for review granted on June 12, 2017).

¶14    On September 5, 2017, the court held an evidentiary hearing, finding sufficient evidence that Polk continued to use the property for agricultural purposes from the time of the injunction in December 2012 through August 21, 2017, determining this violated the zoning code, and awarding a total of $28,760 in forfeitures ($10 a day) in favor of the Village and against each Polk and Thoma (for a total of $57,520).

¶15    Also on September 5, 2017, the court held a hearing on the Village's 2013 motion for contempt. Polk objected to the hearing, contending the court's March 10, 2017 scheduling order did not identify contempt as a remaining issue, and thus it had not received notice and was not prepared to address contempt. Pointing out that the Village had addressed the contempt issue in a June 2017 letter and that the motion had never been withdrawn or abandoned, the court found Polk in contempt and imposed a sanction against Polk for the attorney fees incurred by the Village to prosecute the motion.

¶16    Polk appeals from the several adverse decisions and orders entered against it.

## DISCUSSION

*I.    Standards of Review.*

¶17    We review de novo a court's grant of summary judgment. *Paskiewicz v. American Family Mut. Ins. Co.*, 2013 WI App 92, ¶4, 349 Wis. 2d 515, 834 N.W.2d 866. Whether the agricultural activity was a legal nonconforming use and whether the circuit court properly imposed forfeitures for

violation of the zoning ordinance involve the application of legal standards to undisputed facts, questions of law which we review de novo. *See Waukesha Cty. v. Seitz*, 140 Wis. 2d 111, 116, 409 N.W.2d 403 (Ct. App. 1987). A challenge to a court's competency is a legal question that we review independently. *See Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶7, 273 Wis. 2d 76, 681 N.W.2d 190. A restrictive covenant is a contract, the interpretation of which is a question of law we review de novo. *See Diamondback Funding, LLC v. Chili's of Wis., Inc.*, 2004 WI App 161, ¶6, 276 Wis. 2d 81, 687 N.W.2d 89. We also review independently the interpretation and application of a statute, such as WIS. STAT. § 236.293 in this case, to a set of undisputed facts. *See Associated Bank, N.A. v. Brogli*, 2018 WI App 47, ¶22, 383 Wis. 2d 756, 917 N.W.2d 37. Finally, whether a hearing should be postponed is a matter within the sound discretion of the circuit court, and we will not disturb it unless discretion was exercised erroneously. *See Brezinski v. Barkholtz*, 71 Wis. 2d 317, 320-21, 237 N.W.2d 919 (1976).

## II. *The Circuit Court Did Not Err in Rejecting Polk's Claim of a Nonconforming Use.*

¶18 Polk argues that it did not violate the zoning code because its continued agricultural use after the property was rezoned residential was a legal nonconforming use of the property.[5] Polk asserts that it harvested the land several times a year, which had been done since 2005.

---

[5] The zoning ordinance states: "The lawful nonconforming use of a structure, land or water, existing at the time of the adoption or amendment of this chapter may be continued, although the use does not conform with the provisions of this ordinance." VILLAGE OF SLINGER, WIS., ZONING ORDINANCE art. 8.01 (2017).

¶19    A nonconforming use is one which lawfully existed prior to the effective date of a zoning restriction, and which is allowed to continue to exist in nonconformity with the restriction until such time as the use is abandoned.  *See Lessard v. Burnett Cty. Bd. of Adjustment*, 2002 WI App 186, ¶15, 256 Wis. 2d 821, 649 N.W.2d 728; *State ex rel. Morehouse v. Hunt*, 235 Wis. 358, 372, 291 N.W. 745 (1940) (a nonconforming use is abandoned by a voluntary, affirmative, and completed act of the landowner); *State ex rel. Schaetz v. Manders*, 206 Wis. 121, 124, 238 N.W. 835 (1931); *see also* 8A MCQUILLIN MUN. CORP. § 25:189 (3d ed. July 2018) ("[A] use which does not conform to a zoning law but which lawfully existed at the time the law went into effect and has continued to exist without legal abandonment since that time.").  Nonconforming use ordinances help to deflect undue hardship on property owners when new zoning laws would otherwise eliminate or greatly affect their buildings, land, or activities.  *See Marris v. City of Cedarburg*, 176 Wis. 2d 14, 33-34, 498 N.W.2d 842 (1993).

¶20    Here, Polk committed to abandon the use in no less than three ways. In 2006, Polk sought and obtained the rezoning of the property from agricultural to residential.  This was a voluntary abandonment.  *See Duffy v. Milder*, 896 A.2d 27, 38-39 (R.I. 2006) (property owners chose to develop their property into condominiums, requesting and obtaining the appropriate zoning change; having made that zoning request, any right to continue the prior nonconforming use as a horse farm had been abandoned).

¶21    Moreover, in 2007, Polk entered into the Development Agreement with the Village, which expressly referred to the property being zoned exclusively for residential activity.

¶22    Also in 2007, Polk executed and recorded the Declaration, with the restrictive covenant that each lot "shall be occupied and used only for single family residential purposes and for no other purpose."

¶23    It bears repeating that the restrictions of the Declaration were drafted and recorded by Polk.  Put simply, Polk promised that the property would be used "for no other purpose" than residential.  The promise was not an empty one; Polk gave it teeth.  The remedies section of the Declaration states that the restrictions making the property residential only, as well as the obligations on Polk, "all benefit the Village and are enforceable by the Village."

¶24    Polk's own actions over a period of years to develop a residential subdivision—seeking the change in the zoning and agreeing to residential use only—legally committed Polk to abandon the agricultural use.  Its abandonment was voluntary, affirmative, and complete.  Polk cannot claim any hardship caused by the changes which it sought and agreed to.  Not surprisingly, Polk provides no legal authority for its contention that its continued unlawful use of the property trumps its legal commitments to abandon agricultural use.[6]

III.    *The Circuit Court Did Not Err in Rejecting Polk's Claim That There Was No Zoning Code Violation.*

¶25    Polk bases its argument that there was no zoning code violation on its nonconforming use argument which we have rejected.  The court found that

---

[6] The Village suggests that, even if the nonconforming use existed at one time, Polk has changed the use to a mixed residential/agricultural use and thereby terminated the nonconforming use.  The Village points to the fact that Polk subdivided and platted the property for residential lots, put in streets, utilities, sanitary sewer, etc., and sold several of the lots.  Because we conclude that Polk voluntarily abandoned its nonconforming use, we need not address this argument.

9

Polk had been responsible for unlawful agricultural use on the property from October 7, 2009, through August 21, 2017. Article 15.05 of the zoning ordinance states in part as follows:

> Any person, firm, or corporation who fails to comply with the provisions of this ordinance ... or resists enforcement shall, upon conviction thereof, forfeit not less than $10.00 nor more than $200 for each …. Each day a violation exists or continues shall constitute a separate offense.

VILLAGE OF SLINGER, WIS., ZONING ORDINANCE art. 15.05 (2017). The court was authorized to impose the minimum daily fine.[7]

IV. *The Circuit Court Had Competency to Award the Village the Lost Property Taxes as Damages.*

¶26 As noted, the circuit court awarded the Village approximately $61,000 for the differential between the real estate taxes that were paid for the years 2010 through 2013 at the lower agricultural rate and the taxes that should have been paid for those years at the higher residential rate.

¶27 Against this claim, Polk advances two arguments: the circuit court did not have competency to undertake what Polk calls a reassessment and adjustment of past property taxes and, somewhat related, the Village had no authority to reassess and retroactively impose higher taxes for past years. We reject both arguments.

---

[7] Polk attempts to make an argument that one of the court's orders regarding forfeitures may have mistakenly referred to the municipal code rather than the zoning code and that therefore no zoning code violation has been identified. The argument is without merit. The transcripts and other documents make clear that the court founded its imposition of forfeitures upon Polk's violations of the zoning code via its agricultural use for several years. The argument warrants no further consideration.

¶28    Polk portrays the Village's claim for damages as an attempt to retroactively reassess and adjust Polk's property taxes for 2010 through 2013. Because the Wisconsin statutes have established a comprehensive structure for the assessment and collection of taxes, along with an administrative review that must be exhausted before any circuit court is engaged, Polk contends the Village made its claim in the wrong forum and the circuit court did not have competency to hear it. *See **Hermann v. Town of Delavan***, 215 Wis. 2d 370, ¶¶6-7, 572 N.W.2d 855 (1998) (the detailed and comprehensive objection and appeals procedures provided in WIS. STAT. chs. 70 and 74 were intended to be the exclusive means by which taxpayers may challenge the valuation of real property assessed for taxation).

¶29    Polk's view of the Village's claim is creative but far off course. No tax reassessment or adjustments are being made. The rates are set. The market conditions were set. The Village is not asking that the property be assessed differently or asserting that the assessor made an error that needs correcting.

¶30    Rather, the claim for the tax differential as damages is simply about the fair and accurate measure of damages caused by Polk's breach of its restrictive covenant by failing to maintain the property as residential only. That obligation has been spelled out at least in the zoning ordinance Polk requested, the Development Agreement, and the subdivision Declaration, and was affirmed in the 2012 injunction.

¶31    Polk's Declaration provides that any owner who fails to comply "shall be liable for damages" and other remedies. The Declaration's residential use restriction is expressly for the benefit of the Village and the Village is authorized to enforce it. In the event of a breach, the Village may seek an

injunction, and seek a money judgment "for all monies owed to Village" including fees.

¶32　Polk's breach of its contractual obligations entitle the Village to recover its tax differential as damages. The circuit court had competency to hear and address the Village's claim.

> *V.　The Circuit Court Did Not Err in Rejecting Polk's Claim That the Declaration Allows Agricultural Use, Eliminating the Basis for the Injunction.*

¶33　Polk asserts that another provision of the Declaration allows agricultural use, such that the injunction never should have been issued. Article 10.1 of the Declaration states in part:

> **10.1　Reserved Rights.** Pending the sale of all Lots by Declarant, Declarant:
>
> 　　A. May use the Outlots, and any unsold Lots in any manner as may facilitate the sale of Lots including, but not limited to, maintaining a sales and/or rental office or offices, models and signs and/or showing the Lots.

Polk argues that this article is an exception to art. 5.1, which makes the lot use exclusively residential. We disagree.

¶34　We construe contract language according to its plain and ordinary meaning, consistent with "what a reasonable person would understand the words to mean under the circumstances." *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶28, 348 Wis. 2d 631, 833 N.W.2d 586 (citations omitted). If the terms of a contract are plain and unambiguous, we construe it as it stands. *Gottsacker v. Monnier*, 2005 WI 69, ¶22, 281 Wis. 2d 361, 697 N.W.2d 436.

12

¶35    We see no conflict between art. 5.1 and art. 10.1 or any need to deem one of them an exception to the other. Article 5.1 makes very clear that the lots are to be used *only* for residential uses ("Each Lot shall be occupied and used *only* for single family residential purposes *and for no other purpose*."). (Emphasis added.) It furthers the point by providing that no business or commercial activities are permitted, unless authorized by zoning. Here, the zoning at the time the restrictive covenant was recorded precluded agricultural activities. Article 10.1 can easily be interpreted to be consistent with art. 5.1. The former relates to the general business of selling the lots, such as putting in an office and signs, and showing models. There is no indication whatsoever that agricultural activities would be included in the business of selling the lots. Article 5.1 is without exception and makes clear that the subdivision is to be residential.

¶36    Moreover, Polk could not use an unsold lot in a way that violated the residential zoning requirement it sought, or breach the Development Agreement Polk executed with the Village committing to residential use only.

VI.    *The Circuit Court Did Not Err When it Concluded That Polk's Attempt to Amend the Declaration to Allow Agricultural Use Was Impermissible.*

¶37    In May 2013, Polk filed an amended Declaration with new language in art. 10.1 which explicitly allowed Polk to use the outlots and unsold lots for agricultural activities. Polk moved for relief from the injunction.

¶38    The circuit court denied it, citing to WIS. STAT. § 236.293, which states as follows:

> Any restriction placed on platted land by covenant, grant of easement or in any other manner, which was required by a public body or which names a public body or public utility as grantee, promisee or beneficiary, vests in the public

13

body or public utility the right to enforce the restriction at law or in equity against anyone who has or acquires an interest in the land subject to the restriction. The restriction may be released or waived in writing by the public body or public utility having the right of enforcement.

¶39 Providing a well-articulated rationale, which we adopt, the circuit court explained as follows:

[The Declaration states that Polk] "intends to subject such property to certain .... restrictions and obligations with respect to ... use ...." [Article] 5.1 of the Declarations limits property use to "residential purposes." [Article] 11.3 of the declarations provides that "**the restrictions** ... **are enforceable by the Village** ...." (Emphasis added.)

The plain and unambiguous language of [WIS. STAT. § 236.293] … ***prohibits Polk from later amending the Declarations*** to eliminate the requirement that the property be used only for residential purposes ***unless*** that restriction is "**released or waived in writing**" by the Village of Slinger.

Based on the language contained in [articles] 5.1 and 11.3 of the Declarations, it is undisputed that [Polk] both agreed to a residential purposes restriction ***and*** made the Village a beneficiary vested with the power to enforce that restriction. It is also undisputed that the Village has not "**released or waived in writing**" the residential purposes restriction.... It necessarily follows that [Polk] cannot unilaterally amend the Declarations to change the residential purposes only restriction.

VII. *The Circuit Court Provided Sufficient Notice and a Proper Hearing to Polk on the Village's Motion for Contempt.*

¶40 In August 2013, the Village moved for contempt relating to Polk's violation of the court's injunction. The court stated that an evidentiary hearing would eventually be set. The motion had been discussed, but not heard, at other court appearances. At a March 2017 status hearing, the Village identified three issues that remained pending, none of which were the contempt motion. On

March 27, 2017, the court signed an order identifying those three issues and setting an evidentiary hearing.

¶41 In a June 29, 2017 letter, the Village advised the court and counsel of two remaining issues: the number of days Polk had violated the zoning code and the resolution of the motion for contempt. The Village asked for an evidentiary hearing. In a June 30, 2017 letter, Polk objected to the contempt motion, stating it had been abandoned and had not been part of the March 27, 2017 order.

¶42 On September 5, 2017, the court held a hearing on several matters, including the Village's motion for contempt. Polk objected, indicating its reliance on the March 27 order that said nothing about contempt. On appeal, Polk argues that it is entitled to notice and a hearing per WIS. STAT. § 785.03(1) and due process.

¶43 The circuit court did not erroneously exercise its discretion in proceeding with the contempt hearing. The contempt motion had been filed and served in August 2013 and, despite Polk's wishes that it had been abandoned, there is no basis to conclude that it was abandoned or withdrawn. Polk therefore was well aware of the substance of the motion for quite some time. Granted, there was some confusion with the March 2017 order not making reference to the contempt motion. But that omission was remedied by the Village's June 29, 2017 letter, which provided sufficient notice that the Village wanted the motion heard. At the September 5, 2017 hearing, Polk's counsel was given some time to review the motion with Thoma, and then counsel called and examined two witnesses. When asked what other witnesses he would have called if he had more time, Polk's counsel said he was not certain, but he would have sought out a person who

could have testified as to the meaning of agricultural use. This arguably would have been just as relevant to the daily forfeitures for zoning code violations, and yet Polk brought no such person. Moreover, Polk makes little effort on appeal to discuss the facts or develop any argument that the activities were not agricultural. Thus, we see no prejudice. The notice and hearing were sufficient.

*VIII.   Polk Fails to Prove That Any Material Errors Occurred During the June 6 or September 5, 2017 Hearings.*

¶44     Polk asserts that the Village failed to prove the number of days on which a zoning code violation occurred. However, Polk is relying on the same false premises or arguments already rejected. Specifically, Polk clings to the belief that the agricultural use was a nonconforming use and therefore not a zoning code violation. The undisputed evidence presented at the hearing showed continued agricultural activity of farm equipment, cutting, bailing, and removing crops from the property through August 2017. Polk's assertions about errors at the hearings fail.[8]

---

[8] Polk asserts that it had submitted a trial brief at the September 5, 2017 hearing. It asserts that there was relevant evidence that should have been admitted pursuant to the law discussed in that trial brief, that the exclusion of the evidence was prejudicial, and a new hearing is required. Polk's assertions are cryptic and undeveloped, such that we need not address them further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

Polk also asserts that Thoma must be reimbursed for monies he paid for the special assessments required under the June 23, 2015 order. However, Polk does not show that it paid monies per a special assessment as opposed to a special charge, which was authorized by the court's order and permitted by art. 11.4 of the Declaration. Further, Polk continues to assert that there was no breach of art. 5.1. As discussed, Polk did breach art. 5.1 and therefore no basis for reimbursement exists. Moreover, we do not see where in the record Polk raised this issue before the circuit court. We generally do not address issues raised for the first time on appeal. *See Associated Bank, N.A. v. Brogli*, 2018 WI App 47, ¶26, 383 Wis. 2d 756, 917 N.W.2d 37.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.