Patrick P. Fee and Mark P. Fogarty, Petitioners-Appellants,

v.

Board of Review for the Town of Florence, Respondent-Respondent.

Court of Appeals

*No. 02–1758. Submitted on briefs December 9, 2002.—Decided December 23, 2002.*

2003 WI App 17

(Also reported in 657 N.W.2d 112.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Patrick P. Fee* of Wauwatosa.

On behalf of the respondent-respondent, the cause was submitted on the brief of *David J. Herrick* of Niagara.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Patrick Fee and Mark Fogarty appeal an order quashing a certiorari appeal of their 2000 property tax assessment. They argue the Town of Florence assessor should have classified their land as agricultural and the board of review erred when it affirmed the assessment. In the alternative, they contend the assessment fails to consider the effect of a conservation contract on a portion of the land's value. In addition, Fee and Fogarty argue the circuit court

improperly relied on *State ex rel. Reiss v. Board of Review*, 29 Wis. 2d 246, 138 N.W.2d 278 (1965), to quash their writ.

¶ 2. We conclude the assessor should have classified the portion of Fee and Fogarty's land not subject to the conservation contract as agricultural. Further, we determine the assessor failed to consider the effect of the conservation contract on the remainder of the land. Finally, we conclude *Reiss* is inapplicable to the facts of this case. Accordingly, we reverse the order and remand the matter to the circuit court.

## BACKGROUND

¶ 3. Fee and Fogarty own approximately 235 acres in the Town of Florence. Of this parcel, ninety-three acres are a hayfield and the remainder is subject to a federal conservation contract. In November 2000, the Town notified Fee and Fogarty that their property had been assessed at $228,000 for the 2000 tax year.

¶ 4. Fogarty appeared before the Florence Board of Review to challenge the assessment. He submitted an objection form, but did not answer a question asking what he believed the property's fair market value was. Fogarty argued the hayfield was agricultural land and had to be valued according to its use value, rather than its fair market value. In addition, he claimed the assessor failed to consider the conservation contract's effect on the property's value.

¶ 5. The assessor replied he did not consider the hayfield agricultural land because Fee and Fogarty did not cut the field themselves, but allowed a neighbor to do it. In addition, the assessor said although he was not aware of the conservation contract when he made the assessment, it was not relevant to the property's value.

The assessor also argued the objection form was improperly submitted under WIS. STAT. § 70.47(7)[1] and *Reiss*. The board of review affirmed the assessment.

¶ 6. Fee and Fogarty sought certiorari review in the circuit court. They argued all of the property should have been classified agricultural and taxed according to use value. The board moved to quash the writ, arguing Fee and Fogarty were never entitled to a hearing before the board of review under *Reiss* because they had improperly filled out the objection form. The trial court agreed, determining that *Reiss* controlled and also that the board had correctly affirmed the assessment. Fee and Fogarty appeal.

## DISCUSSION

¶ 7. We first address Fee and Fogarty's claim the circuit court erred when it quashed their writ based on *Reiss*. A motion to quash a writ of certiorari is in the nature of a motion to dismiss. *See State ex rel. Ruthenberg v. Annuity & Pension Bd.*, 89 Wis. 2d 463, 470, 278 N.W.2d 835 (1979). We review a trial court's decision to dismiss a complaint de novo. *See Town of Eagle v. Christensen*, 191 Wis. 2d 301, 311–12, 529 N.W.2d 245 (Ct. App. 1995).

¶ 8. In *Reiss*, our supreme court determined a board of review may deny a taxpayer a hearing for failing to complete the objection form in writing, as required by WIS. STAT. § 70.47(7)(a). *Reiss*, 29 Wis. 2d at 252. The taxpayer in *Reiss* challenged his assessment by partially completing the statutorily approved objection form, failing to answer several questions. *Id.* at

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

247. The board of review took testimony regarding the assessment over several nights, but ended the proceedings prior to making a final decision because of the taxpayer's failure to complete the form. *Id.* at 248. The supreme court approved this action, saying under § 70.47(7)(a), the taxpayer did not obtain a right to a hearing before the board of review because he did not complete the form. *Id.* at 251. The court noted the board has a right under the statute to insist that the form be completed. *Id.* Although the board is allowed to waive the writing requirement, the parties agreed it did not do so there. *Id.* at 248.

██

¶ 9. Here, however, Fee and Fogarty assert the board waived the writing requirement because it never requested a completed form and also completed the hearing. We agree. At the hearing, the assessor noted Fee and Fogarty left the question of their opinion of the property's fair market value unanswered and argued *Reiss* applied to the situation. The assessor claimed Fee and Fogarty had no right to a hearing because of this. Our review of the record does not reveal the board accepted the assessor's argument. Instead, the board completed the hearing and affirmed the assessment. These actions operate as a waiver of the writing requirement. In *Reiss*, the board adjourned before making a decision. The board here did not do this and therefore waived the writing requirement.

¶ 10. We are not persuaded by the board's claim that Fogarty's appearance before the board did not constitute a full hearing. The board argues the meeting consisted primarily of the assessor giving his explanation of the valuation, and that the transcript does not show the board ever took any final action. Thus, the board contends *Reiss* applies because it adjourned be-

fore reaching a final decision. While we agree the transcript does not show any final action by the board, the record contains a Notice of Board of Review Final Determination dated the same day as the meeting. WISCONSIN STAT. § 70.47(12) requires the board to notify taxpayers of its final assessment through this notice. The board approved the assessor's valuation by giving this notice and in doing so waived the WIS. STAT. § 70.47(7)(a) requirement that the objection be in writing.[2]

¶ 11. Fee and Fogarty next argue the land should have been classified as agricultural and valued it based on its use, not fair market, value. On certiorari review, we review the board's actions. *Edward Kraemer & Sons v. Sauk County Bd. of Adj.*, 183 Wis. 2d 1, 8, 515 N.W.2d 256 (1994). Our review is the same as the circuit court's and is limited to the following issues: (1) whether the board acted within its jurisdiction; (2) whether the board acted according to law; (3) whether the board's action was arbitrary, oppressive or unreasonable, representing its will rather than its judgment; and (4) whether the evidence was such that the board might reasonably make the order or determination in question. *Waste Mgmt. v. Kenosha County Rev. Bd.*, 184 Wis. 2d 541, 554, 516 N.W.2d 695 (1994).

---

[2] Fee and Fogarty also argue they did not need to fill out the omitted line because it asked for their opinion of the property's fair market value because the property was agricultural land that must be assessed based on its use value. *See* WIS. STAT. § 70.32(2r)(c). We do not address this argument because we have determined the board waived the writing requirement and because we cannot conclude the entire parcel should have been classified as agricultural land.

¶ 12. Land must be classified as agricultural if it is devoted primarily to agricultural use. WIS. STAT. § 70.32(2)(c)1. Fee and Fogarty argue both the hayfield and the conservation contract land meet the definition of agricultural use in WIS. ADMIN. CODE § Tax 18.05 and therefore should have been valued according to their use value under § 70.32(2r)(c). Both portions of their land should be classified as agricultural under the current version of § Tax 18.05. *See* WIS. ADMIN. CODE § Tax 18.05(1)(a) and (d) (July 2000).[3] Hay farming is an activity included in subsector 111 of the North American Industry Classification System. Further, Fee and Fogarty argue the conservation land is included in the conservation contract program under 7 CFR 1951, Subpt. S, Exh. H.

---

[3] WISCONSIN ADMIN. CODE § Tax 18.05 (July 2000), provides in pertinent part:

**Tax 18.05 Definitions.** In this subchapter:

(1) "Agricultural use" means any of the following:

(a) Activities included in subsector 111 Crop Production, set forth in the North American Industry Classification System (NA-ICS), United States, 1997, published by the executive office of the president, U.S. office of management and budget. "Agricultural use" does not include growing short rotation woody trees with a growing and harvesting cycle of 10 years or less for pulp or tree stock under NAICS industry 111421.

. . . .

(d) Land enrolled in any of the following federal agriculture programs: the conservation reserve program under 7 CFR 1410; the conservation reserve program 1986–1990 under 7 CFR 704; the water bank program under 7 CFR 752; the agricultural conservation program under 7 CFR 701; or, provided that the land was in agricultural use under par. (a), (b) or (c) at the time of enrollment, the environmental quality incentives program under 7 CFR 1466 or the conservation contract program under 7 CFR 1951, Subpt. S, Exh. H.

¶ 13. These sections of the code, however, were not applicable at the time of the assessment. A note to Wis. Admin. Code § Tax 18.05(1) says subsections (a) and (d) are effective for assessments as of January 1, 2001. While the record does not reflect the exact date of the assessment, it was before January 1, 2001. Thus, the prior section of § Tax 18.05(1) must apply.[4]

¶ 14. We conclude the hayfield should have been classified as agricultural property. Under the version of Wis. Admin. Code § Tax 18.05 in effect at the time of the assessment, agricultural use included "activities included in major group 01—agricultural production—crops, set forth in the standard industrial classification manual, 1987 edition." Hay farming is included in major group 01, and the hayfield should have been classified as agricultural land.

---

[4] Wisconsin Admin. Code § Tax 18.05 (Sept. 1997), provides in pertinent part:

**Tax 18.05 Definitions.** In this subchapter:

**(1)** "Agricultural use" means any of the following:

(a) Activities included in major group 01—agricultural production-crops, set forth in the standard industrial classification manual, 1987 edition, published by the executive office of the president, U.S. office of management and budget.

. . . .

(d) Land eligible for enrollment in any of the following federal agricultural programs: the conservation reserve program 1991–1995 under 7 CFR 1410; the conservation reserve program 1986–1990 under 7 CFR 704; the feed grain program under 7 CFR 1413; the water bank program under 7 CFR 752; the agricultural conservation program under 7 CFR 701; or the dairy price support program under 7 CFR 1430 and 282.

¶ 15. At the hearing, the assessor argued the field could not be agricultural because Fee and Fogarty did not cut the hay themselves, but let their neighbor do it. The board does not make this claim on appeal and admits the identity of the person harvesting the hay is irrelevant to the property's classification. Instead, the board argues that merely cutting hay does not make the land agricultural and that the land must be put to another use to qualify. Under the regulations in place at the time of the assessment, however, the hayfield should have been classified as agricultural land and the board erred when it upheld the assessment.

██

¶ 16. The same is not true for the rest of Fee and Fogarty's property. The section of the code they rely on for the proposition that the conservation contract land is agricultural is missing from the prior version of the code. Fee and Fogarty contend the land is eligible as land enrolled in "the conservation contract land under 7 CFR 1951, Subpt. S, Exh. H." *See* Wis. Admin. Code § Tax 18.05(1)(d) (July 2000). This language was not in the prior version of § Tax 18.05(1)(d) (Sept. 1997), which lists a number of other federal agricultural programs.

¶ 17. Further, the record does not reflect the land would qualify under any of the agricultural programs listed in the prior version of the code. The terms of the contract do not say under what agricultural program the agreement was made. Even if we accept Fee and Fogarty's claim that the agreement was made pursuant to 7 CFR 1951, Subpt. S, Exh. H, that program is not listed under the version of the code in effect at the time of the assessment. We cannot say that portion of the land should have been classified as agricultural.

877

¶ 18. The board did err, however, when it affirmed the assessor's valuation of the conservation contract land because the assessor did not account for the effect of the contract on the land's value. At the hearing, the assessor admitted he was not aware of the contract when he assessed the property, but said that it was irrelevant. WISCONSIN STAT. § 70.32(1g) requires an assessor to consider the effect of "any conservation restriction . . . with the federal government" when valuing property. The assessor acted contrary to the law by failing to consider the effect of the contract, and the board erred when it affirmed the valuation.

¶ 19. We remand this matter to the trial court to remand to the board to assess the hayfield based on its use value as agricultural property and also to determine the conservation contract's effect on the other part of the property's value.

*By the Court.*—Order reversed and cause remanded with directions.