# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1970 & 2016AP2528 |
| COMPLETE TITLE: | Donald J. Thoma and Polk Properties LLC, Petitioners-Appellants-Petitioners, v. Village of Slinger, Respondent-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
(2015AP1970) AND ON BYPASS FROM THE COURT OF
APPEALS (2016AP2528)
Reported at 373 Wis. 2d 766, 895 N.W.2d 854
(2017 – Unpublished)

| | |
|---|---|
| OPINION FILED: | May 10, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 21, 2018 |

| SOURCE OF APPEAL: | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Washington |
| JUDGE: | Andrew T. Gonring |

| JUSTICES: | |
|---|---|
| CONCURRED: | |
| DISSENTED: | ROGGENSACK, C.J., dissents, joined by ZIEGLER, J. (opinion filed). |
| NOT PARTICIPATING: | KELLY, J., did not participate. |

ATTORNEYS:

For the petitioners-appellants-petitioners, there were briefs filed by *Erik S. Olsen*, *Andrew D. Weininger*, and *Eminent Domain Services, LLC*, Madison. There was an oral argument by *Erik S. Olsen.*

For the respondent-respondent, there was a brief filed by *Dustin T. Woehl*, *Thomas A. Cabush*, and *Kasdorf Lewis & Swietlik, SC*, Milwaukee. There was an oral argument by *Thomas A. Cabush.*

There was an amicus curiae brief filed on behalf of Wisconsin Farm Bureau Federation by *H. Dale Peterson*, *John J.*

*Laubmeier*, and *Stroud*, *Willink*, *& Howard*, *LLC*, Madison.  There was an oral argument by *H. Dale Peterson.*

There was an amicus curiae brief filed on behalf of the Wisconsin REALTORS Association, Wisconsin Builders Association, and NAIOP-WI by *Thomas D. Larson* and *Wisconsin REALTORS Association*, Madison.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2015AP1970 & 2016AP2528
(L.C. No.  2014CV700)

STATE OF WISCONSIN                :   IN SUPREME COURT

**Donald J. Thoma and Polk Properties LLC,**

   **Petitioners-Appellants-Petitioners,**

   **v.**

**Village of Slinger,**

   **Respondent-Respondent.**

**FILED**

**MAY 10, 2018**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals and APPEAL from an order of the Circuit Court for Washington County, Andrew T. Gonring, Judge. *Affirmed.*

¶1   REBECCA GRASSL BRADLEY, J.   We accepted review in these cases[1] to decide whether an injunction prohibiting

---

[1] This is a consolidated review of two cases:  The first case, 2015AP1970, came to us via a petition for review of Thoma v. Village of Slinger, No. 2015AP1970, unpublished slip op. (Wis. Ct. App. Jan. 18, 2017), and the second case, 2016AP2528, came to us via a petition to bypass the court of appeals' review of the Hon. Andrew T. Gonring's order denying a Wis. Stat. § 806.07 motion to vacate.  These two cases share the same circuit court case number as they both arise from the same underlying matter.

agricultural use of a residentially-zoned property controls the property's tax assessment classification.  As it turns out, all parties agree that the classification of real property for tax purposes is based on the actual use of the property, and that an injunction obtained based on a restrictive covenant does not control tax assessment classification.  This is in fact the law in Wisconsin.  See Wis. Stat. § 70.32(2)(a) (2013-14).[2]

¶2   What remains to be determined in this consolidated appeal is:  (1) whether Donald J. Thoma and Polk Properties LLC (Thoma) presented sufficient evidence to the Village of Slinger Board of Review to overturn the 2014 tax assessment, and (2) whether the circuit court erroneously exercised its discretion when it denied Thoma's Wis. Stat. § 806.07(1)(h) motion asking the circuit court to vacate its original order affirming the Board's decision and remand to the Board for a new hearing. Because the record before the Board contains no evidence that Thoma used the property agriculturally within the meaning of Wisconsin tax law, we hold the Board's decision upholding the tax assessment was lawful, supported by a reasonable view of the evidence, and therefore cannot be disturbed.  We further hold that the circuit court did not erroneously exercise its discretion when it denied Thoma's request to vacate the original order.  Accordingly, we affirm the decision of the court of

---

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

appeals in 2015AP1970, and we affirm the order of the circuit court in 2016AP2528.

## I. BACKGROUND

¶3 This case centers on Thoma's challenge to the Village of Slinger's 2014 property tax assessment for property he purchased in 2004 and has attempted to develop into a residential subdivision known as Pleasant Farm Estates. Before Thoma purchased the land, it operated as a farm and received an agricultural classification for tax assessment purposes. The Village of Slinger continued to classify Thoma's property as agricultural until the 2014 assessment.

¶4 In attempting to develop Pleasant Farm Estates, Thoma worked with the Village of Slinger to rezone the area to residential so individual lots could be sold for construction of single family homes. Other lots were intended for construction of condominiums. Thoma and the Village of Slinger entered into a Developer's Agreement, which set forth three phases of development. The Agreement also contained restrictive covenants, one of which prohibited Thoma from using the land for agriculture——Thoma's use had to be residential.[3] Only two lots were actually sold and the property remains mostly vacant land.

---

[3] The exact language of the restrictive covenant is unknown because this document is not in the record. Nevertheless, for purposes of our review, there is no dispute that the Village of Slinger obtained an injunction based on a restrictive covenant requiring Thoma to limit the property to residential use and cease engaging in any agricultural activity on the property.

The vacant land has ground cover, which is maintained by regular mowing.

¶5   In 2011, the Village of Slinger filed suit against Thoma to enforce the restrictive covenant and in 2012 successfully obtained an injunction prohibiting Thoma from using the land for agricultural purposes.   See Vill. of Slinger v. Polk Prop. LLC, Washington Cty. Circuit Ct. Case No. 2011CV1224. The injunction lawsuit occurred contemporaneously with Thoma's tax assessment challenge, and Thoma's appeal in the injunction lawsuit is currently pending in the court of appeals.   See Vill. of Slinger v. Polk Prop. LLC, 2017AP2244 (Record transmitted to court of appeals on Feb. 27, 2018).

¶6   In order to contest his 2014 tax assessment, Thoma and his counsel appeared before the Village of Slinger Board of Review for a hearing in June 2014.   Three witnesses were sworn to testify:   Thoma; his counsel; and the Village of Slinger's assessor, Michael Grota.   Thoma testified that he thought the property should be classified as agricultural because that was the classification it carried the prior year.   Thoma contended the 62 acres had zero value.   Thoma urged the Board to apply the agricultural classification because nothing had changed on the property from the previous year, he maintained ground cover on the vacant land, and he was having trouble selling the lots.   He shared with the Board vague information about a few other residential development projects that were also struggling and claimed that market value for these projects had dropped substantially.   Thoma did not present any documentation to

4

support these statements, and he offered no testimony or evidence that the property was being used for farming or that he was harvesting crops for food or fiber. Although Thoma left the hearing early to attend a funeral, his counsel remained and reaffirmed several times that Thoma was not farming the property; rather, he was "just maintaining the ground cover," as well as "maintain[ing] the property, to try to sell the lots," and "keeping the ground cover maintained and – and making sure that they're appropriate for – for sale . . . it's not farming, it's just kind of maintaining the – the property."

¶7 Assessor Grota testified that he changed the use classification from agricultural to residential because it was his understanding that the injunction prohibiting any agricultural use on the property required the property to be classified as residential for tax assessment purposes. Grota said his opinion was based on his conversation with Patrick Chaneske, "the Regional Supervisor for the Department of Revenue, in charge of Equalization in Southeastern Wisconsin." Grota submitted comparable sales of similar properties to support the numbers he used to reach his assessment.

¶8 The Board's attorney advised the Board members that maintaining ground cover was not sufficient to obtain an agricultural use classification: "Well, let me clarify. If it is simply maintaining ground cover, it's not an ag[ricutural] use." Ultimately, the Board voted 2-1 to uphold the assessor's assessment because Thoma failed to submit sufficient evidence to prove the assessor's number (or classification) was wrong:

"There's a motion on the table to uphold the assessor's assessment of the property values. Since the objector did not provide adequate evidence in rebuttal and we will now take a roll call vote." Two of the Board's members voted affirmatively. The third Board member voted against the motion because she believed, based on her personal observation, that Thoma was using the property for what she believed qualified as agricultural use——"I've seen the guy on the tractor with the bailer."[4]

---

[4] This court is troubled by the peculiarities in the Board of Review's record in this matter. First, the Board of Review's Transcript notes that only two documents were marked: The "Developer's Agreement" was marked as Exhibit 31 and the "Assessor's Presentation" was marked as Exhibit 51. The transcript contains testimony regarding the Developer's Agreement. Yet, the record the Board sent with the return of the Writ does not contain any exhibit marked 31 or 51. The Board's record does contain a CD marked as "Exhibit 7" which contains "Polk Property Assessor's records" but does not contain anything purporting to be the Developer's Agreement. There is a nine-page document labeled "Amended Developers' Agreement for Pleasant Farm Estates," but only page one of this document is part of the Developer's Agreement. Disturbingly, the second page of this record item is from an entirely different and unrelated case, and the other pages are not the Developers' Agreement. Second, the parties stipulated to the removal of Exhibit 7 from the record, and the circuit court so ordered its removal; the reason for its removal is absent from the record. Third, a DVD-R disk marked "Exhibit 1" and "Slinger BOR June 23, 2014," is not an audio recording of the Board hearing even though, according to the Village of Slinger's Treasurer/Deputy Clerk's sworn "Return on Writ of Certiorari," it is supposed to be. This exhibit instead contains 96 pictures of a dilapidated home taken on September 2, 2013, which has nothing to do with Thoma's case. Fourth, the document the Board holds out to be its "Findings of Fact, Determinations and Decision dated June 23, 2014" is a form document partially filled in with only the number "1" circled in the "Decision" section and no further

(continued)

6

¶9   Thoma petitioned for a writ of certiorari pursuant to Wis. Stat. § 70.47(13), and the circuit court affirmed the decision of the Board in July 2015.[5]  Thoma appealed to the court of appeals, which also affirmed the decision of the Board. Thoma v. Village of Slinger, No. 2015AP1970, unpublished slip op. (Wis. Ct. App. Jan. 18, 2017).  In October 2016, while Thoma's appeal was pending in 2015AP1970, he filed a motion in the circuit court to vacate the circuit court's first decision affirming the Board, claiming that Assessor Grota gave faulty testimony at the Board of Review Hearing.  Specifically, Thoma claimed that Grota misrepresented to the Board that the Wisconsin Department of Revenue required him to classify Thoma's property as residential because of the injunction.  Thoma asserted that the Board's decision erroneously relied on Grota's faulty testimony; therefore, Thoma argued, the circuit court should vacate its original order affirming the Board and send it back for a new Board hearing.  The circuit court entered an order denying Thoma's motion to vacate.  Thoma filed a new appeal, 2016AP2528, and petitioned this court to bypass the

---

explanation given as to the Board's decision outside of the hearing transcript.  We remind the Village of Slinger that its Board of Review is a quasi-judicial body bearing the responsibility to keep accurate records, in part so that courts can engage in a meaningful and complete review of the proceedings.  See Darcel, Inc. v. City of Manitowoc Bd. of Rev., 137 Wis. 2d 623, 626, 405 N.W.2d 344 (1987).

[5] We note that the circuit's order refers to the Village of Slinger Board of Review as the "Board of Appeals."  This scrivener's error does not affect our analysis.

7

court of appeals so that review of this circuit court order could be consolidated with review of the court of appeals decision. We granted Thoma's bypass petition and consolidated these cases.[6]

## II. STANDARD OF REVIEW

¶10 In certiorari review under Wis. Stat. § 70.47(13), we review the Board of Review's decision, not the decisions of the circuit court or court of appeals, although we benefit from their analyses. See Sausen v. Town of Black Creek Bd. of Rev., 2014 WI 9, ¶¶4-5, 352 Wis. 2d 576, 843 N.W.2d 39. Review is limited to "the record made before the board of review." Saddle Ridge Corp. v. Bd. of Rev., 2010 WI 47, ¶36, 325 Wis. 2d 29, 784 N.W.2d 527. Our review is confined to deciding "whether the board's actions were: (1) within its jurisdiction; (2) according to law; (3) arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) supported by evidence such that the board might reasonably make the order or determination in question." Sausen, 352 Wis. 2d 576, ¶6 (footnote omitted). The taxpayer challenging an assessment based on improper classification bears the burden of proving the classification is erroneous. Id., ¶10. If the taxpayer does not meet his burden of proof and "the board's determination to

---

[6] The document Thoma filed with this court was labeled a "Motion to Consolidate." We construed it as a petition to bypass.

maintain the assessment is supported by a reasonable view of the evidence," we will affirm the Board's decision. Id.

¶11 In reviewing a circuit court's order denying relief under Wis. Stat. § 806.07(1)(h), we apply the erroneous exercise of discretion standard. See Miller v. Hanover Ins. Co., 2010 WI 75, ¶29, 326 Wis. 2d 640, 785 N.W.2d 493. If the circuit court based its decision on the pertinent facts in the record, applied the correct legal standard, and reached a reasonable determination, it properly exercised its discretion and we will uphold its decision. See Larry v. Harris, 2008 WI 81, ¶15, 311 Wis. 2d 326, 752 N.W.2d 279.

### III. DISCUSSION

¶12 Thoma wants his land classified as agricultural for tax assessment purposes. His arguments before this court rest on three basic propositions: (1) Thoma and Grota previously agreed that ground cover counted as agricultural use; (2) Grota's testimony that the injunction controlled over actual use caused the Board to reach the wrong decision; and (3) the hay and alfalfa being cut on his property falls under subsector 111, Crop Production, of the North American Industry Classification System (NAICS), which satisfies the legal tax definition of agricultural use.[7]

---

[7] Thoma also argued that public policy supports maintaining an agriculture classification for land undergoing economic development. The Wisconsin Farm Bureau Federation submitted an amicus brief refuting Thoma's claim. The court appreciates the Farm Bureau's thoughtful recitation explaining the history of the use-value assessment legislation enacted to protect
(continued)

9

¶13 Our review is limited both by the applicable standard of review in certiorari actions and by the evidence presented to the Board at the hearing "no matter how incomplete or inadequate it may be." See State ex el. Hemker v. Huggett, 114 Wis. 2d 320, 323, 338 N.W.2d 335 (Ct. App. 1983). These two constraints lead us to a simple conclusion: Thoma did not present sufficient evidence to the Board to support an agricultural classification of his property under the tax assessment law. To the contrary, the evidence presented to the Board supports the assessor's residential classification. Thus, we must affirm the Board's decision upholding the assessment. See Dempze Cranberry Co., Inc. v. Bd. of Rev., 143 Wis. 2d 879, 884, 422 N.W.2d 902 (Ct. App. 1988); Northland Whitehall Apts. Ltd. P'ship v. City of Whitehall Bd. of Rev., 2006 WI App 60, ¶24, 290 Wis. 2d 488, 713 N.W.2d 646. We must affirm even if Thoma and Grota wrongly believed that ground cover qualified as agricultural use and even if Grota classified the property as residential based on the injunction, because our decision depends on the evidence before the Board and what the law is, not on off-the-record conversations or an assessor's misunderstanding of the law. Although Grota erred both in basing his classification solely on the injunction and testifying that the injunction determined classification, neither error impacts our conclusion. Thoma's failure to submit

---

Wisconsin's farmland.

any evidence to prove agricultural activity was taking place on his property leaves the residential classification unrebutted, supported by the evidence, consistent with applicable law, and therefore correct.

A.   Tax Assessment Agricultural Classification

¶14  Before addressing the merits of this case, we set forth the law applicable to tax assessment and the requirements for land to receive classification as agricultural.  A property is assessed according to its classification, which is determined by its use.  Wis. Stat. § 70.32(2)(a).  There are eight classes of property, including residential and agricultural.[8]   Id. Wisconsin Stat. § 70.32 specifically cross-references "ch. Tax 18 Wis. Adm. Code," which provides that an assessor "shall classify as agricultural land devoted primarily to agricultural use."  Wis. Admin. Code DOR § Tax 18.06(1).  "'Land devoted primarily to agricultural use' means land in an agricultural use for the production season of the prior year, and not in a use

---

[8] Wisconsin  Stat.  § 70.32(2)(a)  lists  eight  possible  use classifications as:

1. Residential.
2. Commercial.
3. Manufacturing.
4. Agricultural forest.
5. Undeveloped.
5m. Agricultural.
6. Productive forest land.
7. Other.

that is incompatible with agricultural use on January 1 of the assessment year."  Wis. Admin. Code DOR § Tax 18.05(4).[9]

¶15  Wisconsin Stat. § 70.32 also provides:  "'Agricultural land' means land, exclusive of buildings and improvements and the land necessary for their location and convenience, that is devoted primarily to agricultural use."  Wis. Stat. § 70.32(2)(c)(1g);  and  "'Agricultural use' means agricultural use as defined by the department of revenue by rule and includes the growing of short rotation woody crops, including poplars and willows,  using  agronomic  practices."  Wis.  Stat. § 70.32(2)(c)(1i).

¶16  The Department of Revenue defines "agricultural use" to mean "[a]ctivities included in subsector 111 Crop Production, set forth in the North American Industry Classification System (NAICS)."  Wis. Admin. Code DOR § Tax 18.05(1)(a).[10]  The NAICS

---

[9] Wisconsin Admin. Code DOR § TAX 18.06(1) provides:

Land  devoted  primarily  to  agricultural  use  shall typically bear physical evidence of agricultural use, such  as  furrow,  crops,  fencing,  or  livestock, appropriate  to  the  production  season.  If physical evidence  of  agricultural  use  is  not  sufficient  to determine agricultural use, the assessor may request of the owner . . . such information as is necessary to determine  if  the  land  is  devoted  primarily  to agricultural use.

[10] Wisconsin  Admin.  Code  DOR  §  Tax  18.05(1)(b)-(d)  also defines "agricultural  use"  to  mean  activities  relating  to "subsector 112 Animal Production," "[g]rowing Christmas trees or ginseng," and "[l]and without improvements subject to a federal or state easement . . . ."

12

is reproduced in full in the Wisconsin Property Assessment Manual (WPAM).  The NAICS explains that "[i]ndustries in the crop production subsector grow crops mainly for food and fiber," and the "production process is typically completed when the raw product or commodity grown reaches the 'farm gate' for market."  WPAM, ch. 11, App. A-13.  It further describes "Crop Production" "establishments" "as farms, orchards, groves, greenhouses, and nurseries, primarily engaged in growing crops, plants, vines, or trees and their seeds."  Id.

¶17  We emphasize what is clear under applicable law and undisputed by the parties:  classification of real property for tax assessments is based on how the property is being used.  See Wis. Stat. § 70.32(2); Wis. Admin. Code DOR § Tax 18.05(1).  Zoning, injunctions, ordinances, and contracts do not trump actual use for tax assessment purposes.  See Fee v. Bd. of Rev., 2003 WI App 17, ¶12, 259 Wis. 2d 868, 657 N.W.2d 112; Wis. Stat. § 70.32(2)(c)(1g); https://www.revenue.wi.gov/Pages/FAQS/slf-useassmt.aspx  (last visited Feb. 28, 2018).  Although an injunction, contract, or ordinance may be presented to argue how the property is supposed to be used, none can be the decisive factor for tax assessment purposes.  Actual use controls whether property qualifies for agricultural or any other classification for tax assessment purposes.  In order to obtain agricultural use classification, the property owner must meet the definition of agricultural use set forth in the statutes and tax code.

¶18 Property falls under a residential classification if it is a "parcel or part of a parcel of untilled land that is not suitable for the production of row crops, on which a dwelling or other form of human abode is located and which is not otherwise classified under this subsection." Wis. Stat. § 70.32(2)(c)3. In determining "whether vacant land should be classified as residential" the following questions are considered:

- "Are the actions of the owner(s) consistent with an intent for residential use?";

- "Is the size of the parcel typical of residential or developing residential parcels in the area?";

- "Is the parcel zoned residential or is residential zoning likely to be allowed?";

- "Is the parcel located in a residential plat, subdivision, CSM or near other residential development?";

- "Does the parcel's topography or physical features allow for residential use?";

- "Is the parcel located in an urban or rapidly changing to urban area, as contrasted with a location distant from much residential activity?";

- "Are there any other factors affecting the parcel which would indicate residential use is reasonably likely or imminent?".

Wisconsin Property Assessment Manual 12-1 (Rev. 12/2017).

    B. Thoma's Burden & Presentation at the Board Hearing

14

¶19 In property tax assessment challenges, the taxpayer bears the burden of proving the assessment is wrong. See Sausen, 352 Wis. 2d 576, ¶37. If the taxpayer fails to meet his burden of justifying a change in the assessment, then the Board's only option is to accept the assessor's assessment. This is so because a presumption attaches to the assessor's valuation, Wis. Stat. § 70.47(8)(i),[11] and unless the taxpayer presents information proving the assessor's classification or valuation is wrong, the taxpayer is stuck with the assessment. See Woller v. DOT, 35 Wis. 2d 227, 232, 151 N.W.2d 170 (1967) ("When the assessment is disputed, as here, the burden of proof is on the taxpayer to show error."); State ex rel. Giroux v. Lien, 108 Wis. 316, 318, 84 N.W. 422 (1900) ("The assessment needs no support by evidence in the first instance, but must stand, unless shown to be incorrect by reasonably direct and unambiguous evidence.").

¶20 Thoma challenged his 2014 tax assessment because he believed the classification was wrong. The assessor based the 2014 assessment on the residential classification and Thoma believed the property should have been classified as agricultural. Thus, Thoma had the burden to prove to the Board that his property was being used for agricultural use as defined

---

[11] Wisconsin Stat. § 70.47(8)(i) provides: "The board shall presume that the assessor's valuation is correct. That presumption may be rebutted by a sufficient showing by the objector that the valuation is incorrect."

15

in the tax code.   As noted, "agricultural use" bears a very specific meaning for tax assessment purposes.

¶21 Thoma did not present any such evidence.   Rather, Thoma and his attorney repeatedly denied that any farming was taking place.   Thoma and his attorney testified only that he was growing ground cover to maintain the property, hoping the lots could be sold for residential construction.   This dooms Thoma's case.

¶22 Thoma's erroneous belief that growing ground cover qualified the property for agricultural classification has no impact on the analysis, nor does his contention that he and Assessor Grota privately agreed that ground cover constitutes agricultural use.   We must apply the law as it exists, not how a party or an assessor mistakes it to be.   The law does not permit agricultural classification for the use Thoma told the Board existed at the time of the Board hearing.   Because Thoma admitted he was using the property only for maintaining ground cover, and ground cover does not fall within the statutory definition of agricultural use, the Board had no choice but to uphold the assessment.   In so doing, it acted within its jurisdiction, according to law, in a reasonable manner, and with evidentiary support.

¶23 Further, Thoma's claim on appeal that he was also growing and harvesting hay and alfalfa does not alter our decision.   We are bound by the record before the Board.   See Saddle Ridge Corp., 325 Wis. 2d 29, ¶36; Hemker, 114 Wis. 2d at 323.   Neither Thoma nor his attorney presented any testimony to

16

the Board that the property was being operated as a hay and alfalfa farm or that any crop was being grown on the property to be sold for food or fiber. Instead, both adamantly denied any farming took place at all on the land and insisted that Thoma was maintaining ground cover only. The only reference to hay at the Board hearing came from the Board's attorney who explained that if a property owner is cutting and bailing hay and using it to feed livestock, then the property qualifies for agricultural use classification. The dissenting Board member's comments could potentially be construed to support a bailing hay use,[12] but no one testified that hay or alfalfa was being grown, bailed, or sold for food or fiber. The Board attorney was simply giving a hypothetical that hay bailing would be an agricultural use——not that this actually occurred on Thoma's property. The dissenting Board member believed something was being grown and bailed on the property but said nothing about it being sold or used for food or fiber. Regardless, neither the Board attorney nor the dissenting Board member were sworn witnesses. In short, Thoma failed to present any evidence that his use qualified as agricultural for tax assessment purposes.

---

[12] The dissenting Board member's comments included a response to the Board attorney's explanation about the hay, "That's why I'm confused. I - I was out there and I saw there was that going on," [sic] and a desire to classify Thoma's property as agricultural because the dissenting Board member "drove in there every day from the first house that was there, from '08 or whatever it was, and I've seen the guy on the tractor with the bailer and no zero turn was out there cutting grass as a residential maintenance."

17

¶24 We are unpersuaded by Thoma's attorney's attempt during oral argument to establish proof of agricultural use by linking three statements from the hearing: (1) a Board member's personal observation of hay growing on the property in the past; (2) Assessor Grota's testimony that the property's past use was agricultural; and (3) Thoma's testimony that its use had not changed. A Board member's personal observation is not testimony or evidence and the referenced testimony by Grota and Thoma does not change the fact that ground cover does not constitute agricultural use for tax assessment purposes.

¶25 We also reject Thoma's argument that Grota's erroneous view of the effect of the injunction on classification requires a reversal for a new Board hearing. It is troubling that the Village of Slinger's assessor presented his incorrect belief to the Board about the impact of the injunction. We expect assessors to know, understand, and apply the correct tax assessment laws. Nevertheless, we are bound by the record. The transcript of the proceedings does not demonstrate that the Board denied Thoma's challenge based on Grota's mistaken "injunction-controls" belief. Rather, the transcript establishes that the Board denied Thoma's challenge because the evidence indicated Thoma was maintaining ground cover on his land, which does not constitute a statutorily defined

18

agricultural use.[13] Additionally, even though the assessor adduced the wrong basis for selecting residential classification, this property did in fact qualify as residential according to the statutory definition of residential use. It was untilled land not suitable for production or row crops and was "not otherwise classified." See Wis. Stat. § 70.32(2)(c)3. And, there can be no dispute that the property was properly classified as residential since each of WPAM's inquiries for determining whether vacant land should be classified as residential would be answered affirmatively.

C. Circuit Court Order Denying Thoma's Motion to Vacate

¶26 Thoma next contends the circuit court should have vacated its original order affirming the Board's decision to uphold the assessor's assessment of his property. He claims the circuit court should have granted his request for a new Board hearing because of Grota's "false" testimony at the hearing that

---

[13] Thoma contends the "Minutes" of the Board prepared after the hearing are incorporated into its Findings of Fact, Determinations and Decision because that Decision said "see attached minutes." We reject this contention. First, the Decision says "see attached minutes" but only with regard to "Tax Key Number." Thus, only the tax key number is incorporated into the Decision. Second, although the Minutes were sent to the circuit court, there is nothing in the record documenting how the Minutes were prepared or if the three-member Board approved them. Moreover, in sending the Decision itself to the circuit court, the Village of Slinger's Treasurer/Deputy Clerk did not append the Minutes to the Decision. To be sure, nothing in the Minutes alters our determination that Thoma failed to present sufficient evidence to warrant a change in his 2014 tax assessment.

the injunction controlled the tax classification.  Because the circuit court did not erroneously exercise its discretion when it denied Thoma's motion to vacate, we reject Thoma's claim and affirm the circuit court's order.

¶27  After the circuit court affirmed the Board's decision and dismissed the writ for certiorari, and while Thoma's appeal was pending, he filed another lawsuit directly against Assessor Grota.  See Polk Prop., LLC v. Grota Appraisals, LLC, Waukesha Cty. Circuit Ct., 2016CV63.  Pursuant to that lawsuit, sometime in 2016, Thoma's counsel deposed Grota and Wisconsin Department of Revenue employee Patrick Chaneske.[14]  In September 2016, Chaneske testified at his deposition that he never told Grota an injunction prohibiting agricultural use required Grota to change the classification of Thoma's property from agricultural to residential.  Rather, Chaneske testified he advised Grota that actual use of the property controls classification.

¶28  Shortly after Chaneske's deposition, in October 2016, Thoma filed a motion asking the circuit court to exercise its discretionary authority under Wis. Stat. § 806.07[15] to vacate its

---

[14] Patrick Chaneske worked at the Wisconsin Department of Revenue and at the time of the events in this matter served as the equalization supervisor for the Milwaukee District Office to review and equalize assessments submitted by nine counties in the southeastern part of Wisconsin.  As pertinent here, in 2014, Grota and Chaneske had telephone conversations to discuss the effect of the injunction on classification of Thoma's property for the 2014 property tax assessment.

[15] Wisconsin Stat. § 806.07 provides:

(continued)

20

<u>Relief from judgment or order</u>.  (1) On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect;

(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15 (3);

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void;

(e) The judgment has been satisfied, released or discharged;

(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

(2) The motion shall be made within a reasonable time, and, if based on sub. (1) (a) or (c), not more than one year after the judgment was entered or the order or stipulation was made. A motion based on sub. (1) (b) shall be made within the time provided in s. 805.16. A motion under this section does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to set aside a judgment for fraud on the court.

(3) A motion under this section may not be made by an adoptive parent to relieve the adoptive parent from a judgment or order under s. 48.91 (3) granting adoption of a child. A petition for termination of parental rights under s. 48.42 and an appeal to the court of

(continued)

21

original order affirming the Board's decision. Section 806.07(1)(h) allows circuit courts to relieve a party from a judgment or order for "[a]ny other reasons justifying relief from the operation of the judgment." Id. Thoma claimed Chaneske's deposition proved Grota presented faulty testimony to the Board and the Board relied on the faulty testimony; consequently, Thoma argued, an injustice occurred that could be undone by vacating the original order affirming the Board's decision and sending the matter back to the Board for a new hearing.

¶29 The circuit court disagreed. It refused to exercise its discretion to vacate the original order because: (1) Thoma failed "to show extraordinary and unusual circumstances that justify that relief" under Wis. Stat. § 806.07(1)(h); (2) when the circuit court reviewed the Board hearing transcript, it "was struck by the lack of evidence presented by" Thoma as he "supplied no proof whatsoever as to why the property should remain agricultural"; (3) regardless of Chaneske's testimony, the injunction prevented any agricultural use on the property; (4) the circuit court is limited to "the record made at the Board of Review hearing," and (5) "[t]here is something to be

---

appeals shall be the exclusive remedies for an adoptive parent who wishes to end his or her parental relationship with his or her adoptive child.

22

said for the finality of judgments" particularly when the decision being challenged "was more than two years ago."

¶30 In deciding a Wis. Stat. § 806.07(1)(h) motion, the circuit court should "examine the allegations accompanying the motion," assume they are true, and determine whether they present "extraordinary or unique" facts justifying relief under paragraph (1)(h). Sukala v. Heritage Mut. Ins. Co., 2005 WI 83, ¶10, 282 Wis. 2d 46, 698 N.W.2d 610. "[T]he circuit court should consider whether unique or extraordinary facts exist that are relevant to the competing interests of finality of judgments and relief from unjust judgments." Id., ¶11. If the circuit court finds extraordinary or unique facts from its review of the motion materials, it should hold a hearing to decide "the truth or falsity of the allegations." Id., ¶10. We conclude the circuit court did not erroneously exercise its discretion.

¶31 As a preliminary matter, we note that because Thoma's motion was made more than two years after the Board's decision and more than a year after the circuit court's order affirming the Board's decision, Thoma's only avenue for relief was under Wis. Stat. § 806.07(1)(h)——the catchall "justice" provision. Thoma could not seek relief under Wis. Stat. § 806.07(1)(a)'s "mistake, inadvertence, surprise, or excusable neglect" paragraph; (1)(b)'s "newly-discovered evidence" paragraph; or (1)(c)'s "fraud, misrepresentation or other misconduct" paragraph because Wis. Stat. § 806.07(2) requires such claims be filed within one year of the judgment or order.

23

¶32 Our review shows the circuit court examined the relevant facts and applied the pertinent law to reach a reasonable determination. The circuit court acknowledged the allegations Thoma made in his motion materials, but did not find the allegations presented extraordinary or unique facts warranting relief. The circuit court recounted that the record showed Thoma failed to present any evidence that he was using the property for an agricultural use that satisfied Wisconsin's tax law definition. The circuit court concluded Thoma's allegations did not present extraordinary or unique facts because Chaneske's deposition testimony revealing Grota's error did not alter Thoma's absolute failure to satisfy his burden of proof at the Board hearing. The circuit court also expressed concern about the finality of the order at issue given the substantial amount of time that had passed since the Board decided the case. Although the circuit court improperly included the injunction as a basis, the circuit court's main reason for denying the motion rested on Thoma's failure to present any evidence to support agricultural use. Accordingly, the circuit court's decision was proper.

¶33 This court acknowledges that Chaneske's deposition certainly suggests Grota misunderstood Chaneske during their phone conversations about the injunction, and, as a result, Grota gave the Board incorrect information about the effect of the injunction. But the fact remains that the transcript from the Board hearing reveals Thoma did not submit any evidence to prove agricultural use and the Board's decision was based on

Thoma's failure to meet his burden, not on Grota's incorrect testimony.[16] We recognize that at first retrospective glance, the Board's decision may appear unfair because the assessor selected a tax classification based on his misconception that an injunction controlled it. A Board decision based on such incorrect information certainly raises a specter of injustice. But the record here dispels such concerns. If the record established that Thoma had presented evidence to the Board that his use was agricultural as defined by the tax law, and the Board nevertheless rejected his proof in reliance on Grota's erroneous testimony that the injunction trumps use, we would agree with Thoma that the circuit court should have granted him relief. But the hearing transcript uncovers no such evidence.

## IV. CONCLUSION

¶34 In this consolidated case, we conclude that Thoma failed to prove he was using his property for agricultural use as that term is statutorily defined for tax assessment purposes. The Village of Slinger's assessor testified, mistakenly, that an injunction controls a property's classification for tax assessment purposes, but his misapprehension of the law did not supply the basis for the Board's decision to uphold the

---

[16] Thoma characterizes Grota's testimony as false. It was certainly incorrect, but there is nothing in this record suggesting that Grota lied to the Board.

assessment.[17] Rather, the lack of any evidence to show the property fit an agricultural classification occasioned the Board's decision, which is supported by a reasonable view of the evidence. We further conclude the circuit court did not erroneously exercise its discretion in denying Thoma's motion to vacate the original order affirming the Board's decision. Thus, we affirm the decision of the court of appeals in 2015AP1970, and we affirm the order of the circuit court in 2016AP2528.[18]

¶35 DANIEL KELLY, J. did not participate.

*By the Court.*—The decision of the court of appeals is affirmed, and the order of the circuit court is affirmed.

---

[17] Because our review is of the Board's decision, we need not specifically discuss or correct any statements by the circuit court or the court of appeals that could be construed to mean the injunction controls tax classification. Neither opinion is published or precedential.

[18] After briefing was complete, the parties filed a series of motions in the weeks leading up to oral argument. In a February 20, 2018 order, this court decided one motion and left the others to be addressed during oral argument. None of these pending motions were discussed during oral argument, and we decline to address them further as our disposition does not require it. Any outstanding motions are denied.

¶36 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting).* Land must be classified as agricultural if its use is agricultural. Fee v. Bd. of Review for Town of Florence, 2003 WI App 17, ¶12, 259 Wis. 2d 868, 657 N.W.2d 112. For the reasons I address more fully below, the Board of Review did not make any findings in regard to Mr. Thoma's use of his land. Instead, the erroneous legal instructions of the Board's attorney drove their decision to affirm the appraisal of Mr. Thoma's property. The Board's attorney said that due to an injunction in another case between the Village of Slinger and Mr. Thoma that concerns the same property as does the case now before the court, the Board could no longer classify Mr. Thoma's vacant farm land as agricultural because it was zoned residential and the injunction enforced that zoning. The majority errs because it ignored the erroneous advice given to the Board by its attorney and also because it ignored the undisputed factual testimony of Assessor Grota that Mr. Thoma's use qualified as agricultural use under taxation laws, but that he was precluded from classifying it as agricultural due to the circuit court injunction that prohibited agricultural use of Mr. Thoma's property.

¶37 Because the Board of Review was given erroneous legal advice from its attorney, and because the undisputed testimony shows that Mr. Thoma's use qualified as an agricultural use, Mr. Thoma has rebutted the presumption of correctness that is accorded to an assessor's appraisal. Therefore, I would reverse the Board of Review's classification decision and remand it to

1

the Board to reconsider its classification decision consistent with Wis. Stat. § 70.32(2)(a) and Wis. Adm. Code § Tax 18.06(2)(d) (June 2015), and further testimony from Assessor Grota. Accordingly, I respectfully dissent from the majority opinion.[1]

## I. BACKGROUND

¶38 Mr. Thoma purchased 62 acres of vacant farm land in 2004 and 2005. It was part of the Melius Farm. He then entered into a development agreement with the Village of Slinger to create Pleasant Farm Estates. At the June 23, 2014, Board of Review hearing, Mr. Thoma explained that the parcel has been classified as agricultural for taxation purposes, even though all lots in the proposed development were zoned residential in 2007 or 2008.[2] He said that taxation was "based on the use" until 2014 when the assessor changed to residential classification.[3]

¶39 At the hearing, Mr. Thoma explained the development agreement with the Village. He said that the proposed development had three phases. The Village required that 50% of the lots in Phase I be sold before any lots in Phase II or Phase III could be sold. There are 17 lots in Phase I and only two

---

[1] My dissent addresses the majority opinion's decision on certiorari review of the Board of Review's decision. I do not address the majority opinion's affirmance of the circuit court's order denying Mr. Thoma's motion for reconsideration because my decision on certiorari review obviates the need to do so.

[2] Hearing Tr. 37.

[3] Id.

lots have been sold.[4]   Therefore, all lots in the proposed development are not eligible to be purchased.

¶40 Mr. Thoma was asked why he believed that the tax status had changed.  He said, "We were taxed on agricultural use and now we're taxed on a residential use."[5]

¶41 Assessor Grota was asked, "why the change from the 2013 where it's assessed at ag to the 2014 present?"[6]  Assessor Grota responded, "I guess two things.  One, . . . the Department of Revenue's opinion was that use trumps requirements, so if the land was being used in an acceptable agricultural manner, even if there was a restriction that the property couldn't be used for agriculture, I had to extend that.  In – per Department of Revenue opinion, the court order – or with a cease and desist statement within it, would trump that use ability.  As Pat Janeske, the Regional Supervisor for the Department of Revenue, . . . rendered that opinion in conference call."[7]

¶42 A Board member then asked, "So basically the change in assessment was due to the Department of Revenue's decision?"[8] The Board's attorney then inserted himself into the hearing and answered the question that had been directed to Assessor Grota. The attorney said, "What the assessor is saying that the

---

[4] Id. at 30.

[5] Id. at 34.

[6] Id. at 58.

[7] Id. at 58-59.

[8] Id. at 60.

Department of Revenue has understood that – if a municipality goes and gets a court order, they've satisfied – you know, they've done all they can. If crop is still there and it's in defiance of a court order, the municipality's done all they can and – and the assessment will revert to the underlying zoning rather than the – the ag[ricultural] use."[9]

¶43 The 2013 appraisal of Mr. Thoma's property had been based on Assessor Grota's opinion that its use was agricultural. However, in 2014, Assessor Grota believed that he could no longer classify Thoma's property based on its use because the injunction that affected his property prohibited agricultural use of the land. Therefore, he appraised the property as individual residential lots.

¶44 This change significantly affected the tax assessments of all of the lots. To give a few examples, the 2013 appraisal of $300 for tax parcel number V5-0815-001 increased to $48,300 for 2014.[10] The 2013 appraisal of $100 for tax parcel number V5-0815-057-008 increased to $35,400 for 2014.[11] Of course the new appraisals dramatically increased Mr. Thoma's tax obligation.

¶45 When Board members continued to be concerned about ignoring agricultural use because they understood that changing the classification caused taxes to increase, the Board's

---

[9] Id. at 60-61.

[10] June 23, 2014 Hearing Ex. 4.

[11] June 23, 2014 Hearing Ex. 3.

attorney doubled down on his erroneous instructions to the Board and his explanation of Assessor Grota's appraisal. He said, "Because there's a court order here, the state has told the assessor that he can assess it as it is zoned and as it is available for purchase, not as it is used."[12] To which explanation, Assessor Grota responded, "Exactly."[13] However, Mr. Thoma's attorney said "he's continued to maintain the ground cover which is an ag[ricultural] use."[14]

¶46 As the Board's attorney was attempting to wind up the hearing, again, a Board member wanted to be sure that she understood Assessor Grota's opinion. "Are you saying then that you feel that that was being used as agriculture, not just ground cover maintenance?"[15] To which Assessor Grota said, "I believe that within Chapter Tax 18, which is what we should follow as well as the guide put out by the Department of Revenue for use – use value, that it had previous – well, it - it had previously met those two burdens . . . to be assessed as agricultural."[16] As a further explanation, Assessor Grota said, "Now the court order changed – changed the precedent then from use to use didn't matter because it was being used illegally."[17]

---

[12] Hearing Tr. 68.

[13] Id.

[14] Id. at 69

[15] Id. at 70.

[16] Id.

[17] Id. (emphasis added).

¶47 The Board of Review voted 2 to 1 to accept Assessor Grota's appraisal that classified all 62 acres as residential property.[18] Mr. Thoma appealed the Board's decision by petitioning the circuit court for certiorari review. The circuit court affirmed the Board of Review, as did the court of appeals.

## II. DISCUSSION

¶48 This case presents procedurally as a certiorari review of the Board of Review's decision pursuant to Wis. Stat. § 70.47(13). As such, we review the record from the Board of Review. Wood v. City of Madison, 2003 WI 24, ¶12, 260 Wis. 2d 71, 659 N.W.2d 31. Where the factual basis for a board's decision is unclear, the case should be remanded to the board for specific findings of fact and conclusions of law. Edmonds v. Bd. of Fire & Police Comm'rs, 66 Wis. 2d 337, 346-48, 224 N.W.2d 575 (1975).

## A. Standard of Review

¶49 Certiorari review is limited to four issues: (1) whether the tribunal stayed within its jurisdiction; (2) whether the tribunal proceeded under a correct theory of law; (3) whether the tribunal's action was arbitrary, oppressive, or unreasonable, representing its will and not its judgment; and (4) whether the evidence was such that it might

---

[18] At the commencement of the hearing, Mr. Thoma's lawyer asked that the matter be adjourned, due to a recent death causing Mr. Thoma to be in attendance at a funeral that afternoon. The Board's lawyer said, "I think this matter has to proceed now." The Board then denied the request to reschedule.

reasonably have made the determination that it made. FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶8, 301 Wis. 2d 321, 733 N.W.2d 287. Whether a tribunal proceeded under a correct theory of law is subject to our independent review. State ex rel Ziervogel v. Washington Cty. Bd. of Adjustment, 2004 WI 23, ¶14, 269 Wis. 2d 549, 676 N.W.2d 401. It is only this second component of certiorari review that is relevant to the case before us.

### B. Correct Theory of Law

¶50 The Board of Review must make its decision based on a correct theory of law. If it does not, a reviewing court shall set aside its decision. State ex rel Kesselman v. Bd. of Review for Vill. of Sturtevant, 133 Wis. 2d 122, 127-28, 394 N.W.2d 745 (1986) (citing State ex rel Park Plaza Shopping Ctr., Inc. v. Bd. of Review, 61 Wis. 2d 469, 475, 213 N.W.2d 27 (1973)). Failing to make an appraisal on the statutory basis is an error of law correctable on certiorari review. State ex rel Boostrom v. Bd. of Review, 42 Wis. 2d 149, 156, 166 N.W.2d 184 (1969).

¶51 Wisconsin Stat. § 70.32(2)(a) states:

> The assessor shall segregate into the following classes on the basis of use . . . 1. Residential. 2. Commercial. 3. Manufacturing. 4. Agricultural. 5. Undeveloped. 5m. Agricultural forest. 6. Productive forest land. 7. Other.

(Emphasis added). Section Tax 18.06(2) also helps focus the inquiry for tax assessments. It provides:

> For each legal description of property that includes a parcel of agricultural land, the assessor shall indicate on the property record card, by acreage, the category of agricultural land. Categories of agricultural land are the following:

7

(a) First grade tillable cropland.

(b) Second grade tillable cropland.

(c) Third grade tillable cropland.

(d) Pasture.

(e) Specialty land.

The Wisconsin Property Assessment Manual (WPAM), a statutorily incorporated guide to appraisal of real estate, directs that the "[d]etermination of agricultural status is based solely on whether use of the parcel is agricultural in nature." WPAM at 11-10 (2014).

## C. Erroneous Legal Instructions

¶52 Both Assessor Grota and the Board of Review's attorney told the Board that use no longer mattered for tax appraisals. For example, Assessor Grota told the Board that he "believe[d] that within Chapter Tax 18, which is what we should follow as well as the guide set out by the Department of Revenue for use – use value, that it had previous – well, it - had previously met those two burdens . . . to be assessed as agricultural. Now the court order changed – changed the precedent then from use to use didn't matter because it was being used illegally."[19] Mr. Thoma's attorney had already said that "he's continued to maintain the ground cover which is an ag[ricultural] use."[20]

¶53 The Board of Review's attorney also erroneously instructed the Board on the law applicable to tax appraisals.

---

[19] Hearing Tr. 70 (emphasis added).

[20] Id. at 69.

He said, "Because there's a court order here, the state has told the assessor that he can assess it as it is zoned as it is available for purchase, not as it is used."[21]

¶54 Property Records for Village of Slinger, Washington County, hearing exhibits 4 and 5, showed examples of Mr. Thoma's property classified as "1st grade tillable" from 2008 until 2014, when it was changed to "residential."  As one of the Board members said, she drives by Mr. Thoma's property every day and she has seen bailers bailing the hay that grew there and had been cut.[22]

¶55 Therefore, at the Board of Review hearing, all were in agreement that Mr. Thoma's use of the property was agricultural. However, according to the instructions on the law from the Board's attorney and according to Assessor Grota's opinion, use no longer mattered.  Zoning controlled classification.  The Board made no findings or conclusions in regard to use.  That is because use was not the focus of the Board of Review hearing, although one would think that it were, to read the majority opinion.[23]

¶56 Furthermore, how Mr. Thoma used the property was not an issue for the Board of Review to decide because agricultural use had been proved for this exact property in another case in which the Village of Slinger and Mr. Thoma were parties.  It was

---

[21] Id. at 68.

[22] Id. at 72.

[23] Majority op., ¶¶2, 6, 8, 13, 21, passim.

proof of agricultural use that had resulted in the injunction that everyone referred to at the hearing before the Board of Review. The injunction prohibited further agricultural use of this same property, and it was that same injunction and its effect on Assessor Grota's appraisal that drove the decision of the Board of Review. It did so because both the Board of Review's attorney and Assessor Grota believed that zoning trumped use, due to the injunction that the Village had obtained to stop Mr. Thoma from using his property for agriculture.

¶57 That use was not an issue for the Board of Review is clear from this exchange:

> CHAIR GRUDZINSKI: I just have one for Mr. Grota. Are you saying then that you feel that that was being used as agriculture, not just ground cover maintenance?

> VILLAGE ASSESSOR GROTA: I believe that within Chapter Tax 18, which is what we should follow as well as the guide put out by the Department of Revenue for use – use value, that it had previous – well, it – it had previously met those two burdens – you know, to be assessed as agricultural. Now the court order changed – changed the precedent then from use to use didn't matter because it was being used illegally in that – you know, as part of that court order, so that changed what would be normally use trumps.[24]

¶58 The Board of Review conscientiously followed the instructions of its attorney and of Assessor Grota, who told them that use didn't matter because there was an injunction that prohibited agricultural use of Mr. Thoma's property and required that the property be classified as residential. The advice they

---

[24] Hearing Tr. 70.

were given was erroneous and caused the Board to operate on an incorrect theory of law.

¶59 Use controls the classification of real estate for purposes of taxation. Wis. Stat. § 70.32(2)(a). And, as Fee explained, when a property should have been classified as agricultural based on its use, but was not, the Board of Review errs. Fee, 259 Wis. 2d 868, ¶1. Therefore, the Board's decision must be reversed and the matter remanded to the Board for further proceedings based on the legal principles that actually control classification, i.e., the use of the property. § 70.32(2)(a).

III. CONCLUSION

¶60 The Board of Review was given erroneous legal advice on which it based its decision. Accordingly, I would reverse and remand the matter to the Board of Review to give the Board the opportunity to consider Mr. Thoma's appeal under the correct theory of law: use trumps zoning for tax appraisals. Wis. Stat. § 70.32(2)(a).

¶61 I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this dissent.

11